# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 11, 2011

Lyle W. Cayce
Clerk

No. 09-10968

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOSEPH MUDEKUNYE; FABIAN MUYABA

Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Texas

Before BARKSDALE, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:

Fabian Muyaba, Joseph Mudekunye, and three co-defendants were charged in a 39-count indictment stemming from their tax-fraud conspiracy. Muyaba, Mudekunye, and one co-defendant were convicted in a joint jury trial. Muyaba challenges the sufficiency of the evidence to support his convictions; the district court's applying two Sentencing Guideline enhancements; and its ordering part of his sentence to run consecutively. Mudekunye challenges its failure to sever his trial from Muyaba's; and his sentence as being procedurally unreasonable. We AFFIRM in part and VACATE and REMAND in part.

**I.**

From 2004 to 2007, Mudekunye and Muyaba worked as tax preparers at Reliable Tax Services in Dallas, Texas, where they participated in a conspiracy to file fraudulent tax returns. In 2007, Muyaba began operating Efficient Tax Service, where he and Mudekunye prepared tax returns in a similar, fraudulent manner.

At both Reliable and Efficient, Mudekunye and Muyaba falsified tax returns in several ways, *inter alia*: changing their clients' filing status ("single" to "head of household"); and claiming losses for non-existent businesses. Upon receiving their tax refunds, the clients were charged sizeable and misleading fees.

To avoid IRS detection, Reliable submitted returns using a different Electronic Filer Identification Number each year. Defendants also hid their fraudulent operations by denying their clients copies of their returns, despite repeated requests. Consequently, until they were contacted by the IRS, many clients were unaware their tax returns contained false information.

Following a Government investigation, Mudekunye, Muyaba, and three co-defendants were charged in the 39-count indictment. All were charged with conspiracy to prepare fraudulent tax returns, in violation of 18 U.S.C. § 371. Mudekunye and Muyaba were each charged with multiple counts of: aiding and assisting in the preparation of fraudulent tax returns, in violation of 26 U.S.C. § 7206(2); aiding and abetting, in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7206(2); and identity theft, in violation of 18 U.S.C. § 1028(a)(7) and (c)(3)(A).

At the conclusion of the Government's case-in-chief, Muyaba's motion for judgment of acquittal was granted for three counts. A jury found Muyaba guilty on seven of ten counts; Mudekunye, six of 12.

Muyaba was sentenced, *inter alia*, to 120 months' imprisonment: 60 on count 1 (conspiracy); a consecutive 24 on count 33 (preparation of fraudulent tax

forms); and 36 each on counts 27-28 and 30-32 (same offense), to run concurrently with each other, but *consecutive* to the sentences for counts 1 and 33.  Mudekunye received, *inter alia*, 97 months' imprisonment:  60 on count 1 (conspiracy); 36 on counts 7, 9, and 25 (preparation of fraudulent tax forms); and 97 on counts 35-36 (identity theft), to run concurrently.

## II.

Muyaba's, then Mudekunye's, claims are addressed.  Analysis of one or more claims for each is restricted because their review is only for plain error.

### A.

Muyaba presents two challenges to  his convictions; four, to his sentence.  Each fails.

#### 1.

Muyaba preserved his sufficiency challenge by moving, pursuant to Federal Rule of Criminal Procedure 29(a), for judgment of acquittal at the close of both the Government's case-in-chief and all the evidence.  Accordingly, review is *de novo*. *E.g.*, *United States v. Simmons*, 470  F.3d 1115, 1120 (5th Cir. 2006).  His "verdict will be affirmed if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt".  *Id.* (citation and internal quotation marks omitted).  All evidence is viewed, and reasonable inferences drawn, in the light most favorable to the verdict; "we evaluate neither the weight of the evidence nor the credibility of the witnesses".  *Id.*  "'The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence.'" *United States v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999) (quoting *United States v. Burton*, 126 F.3d 666, 669-70 (5th Cir. 1997)).

**a.**

For his sufficiency challenge to his conspiracy conviction, Muyaba contends:  the evidence did not show he worked at Reliable; and,  therefore, the Government did not establish his involvement in the tax-fraud conspiracy there. The Government had to prove beyond a reasonable doubt that "defendant either positively or tacitly agreed with another person to accomplish a common and unlawful plan, and that during the existence of the conspiracy, one of the conspirators knowingly committed an overt act in furtherance of the conspiracy". *United States v. Bourgeois*, 950 F.2d 980, 983 (5th Cir. 1992).  The agreement need not be explicit, and "may be inferred from a concert of action".  *United States v. Mann*, 161 F.3d 840, 847 (5th Cir. 1998) (citation and internal quotation marks omitted).

The evidence established that Muyaba worked as a tax preparer at Reliable; had a cubicle there; was engaged by many clients when they visited it for tax-filing help; and was one of several of its tax preparers who fraudulently prepared returns. A rational trier of fact could find, beyond a reasonable doubt, that Muyaba was part of the conspiracy.

**b.**

Muyaba also makes a sufficiency challenge to his conviction for aiding and assisting in the preparation of false and fraudulent tax forms at Reliable.  The Government had to prove, beyond a reasonable doubt, that Muyaba "willfully aided, assisted, counseled, or advised another in the preparation or presentation under the internal revenue laws of a document that is fraudulent or false as to any material matter".  *United States v. Clark*, 577 F.3d 273, 285 (5th Cir. 2009) (citation and internal quotation marks omitted).

A reasonable jury could have found Muyaba guilty on those counts. Evidence established that, while working at Reliable (and Efficient), Muyaba presented himself as a tax-return preparer; discussed tax returns and refunds

4

with his clients; received tax-preparation information from them; and claimed business losses, credits, and deductions on their returns that were neither substantiated nor requested.

Muyaba insists some of the trial testimony was "incredible and unworthy of belief". As noted, the evidence's being sufficient does *not* require the removal of all doubt, *e.g.*, *Anderson*, 174 F.3d at 522; and, it is not our role to evaluate witness credibility—that, of course, is for the jury, *Simmons*, 470 F.3d at 1120. Moreover, to the extent Muyaba contends there was a lack of evidence showing he *filed* the fraudulent returns, he misstates the elements for violation of 26 U.S.C. § 7206(2): that defendant must file the return is *not* one of them. *See Clark*, 577 F.3d at 285.

## 2.

In challenging two enhancements to his offense level, Muyaba contends: the one for leader-or-organizer does not apply to him; and the one for obstruction-of-justice was applied incorrectly because he did not commit perjury at trial. The district court's findings of fact for sentencing are reviewed for clear error; its application and interpretation of the Guidelines, *de novo*. *United States v. Creech*, 408 F.3d 264, 270 n.2 (5th Cir. 2005). Of course, the leader-or-organizer and obstruction-of-justice enhancements involve factual findings, reviewed for clear error; however, "[a] ruling that . . . findings permit an obstruction-of-justice enhancement is a question of law, reviewed *de novo*". *United States v. Miller*, 607 F.3d 144, 148 (5th Cir. 2010) (citations and internal quotation marks omitted). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." *United States v. Valencia*, 44 F.3d 269, 272 (5th Cir. 1995).

**a.**

Guideline § 3B1.1(c) provides: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity . . . , increase [his offense level] by 2 levels". Its commentary states:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

U.S.S.G. § 3B1.1 cmt. n.2.

The court applied the two-level enhancement based upon finding that Muyaba "was an organizer and a leader in the Efficient Tax Service", serving as its owner, and the employer of at least one other person, Mudekunye. In contesting this enhancement based upon his role at Efficient, although he is silent about his work there, Muyaba maintains the district court clearly erred because "he didn't play as big a part in Reliable as the others". The enhancement was based upon Muyaba's role at Efficient, *not* Reliable.

**b.**

In challenging his obstruction-of-justice enhancement for perjury at trial, Muyaba maintains: his testimony about Amber Redden was his "belief", which is insufficient to be classified as a lie; and evidence of Muyaba's wife having removed his office documents following his arrest is insufficient to show he lied about not having access to his business records. The Guideline provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's

offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.  Additionally, "the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice".  U.S.S.G. § 3C1.1 cmt. n.2; *see also United States v. Greer*, 158 F.3d 228, 239 (5th Cir. 1998) (noting courts "must carefully consider whether the defendant has engaged in [obstructive] behavior in a conscious and deliberate attempt to obstruct or impede the administration of justice").

Muyaba testified he had no access, post-arrest, to documents at Efficient; however, other evidence showed his testimony was false because his wife had then retrieved those documents.  Additionally, Muyaba testified that he believed one of his clients, Redden, had employed Muyaba's brother in Missouri to complete her return.  Redden's testimony, however, was that she did not know Muyaba's brother, and had watched Muyaba complete it.

In addition, there were manifest inconsistencies in other portions of his testimony.  In applying the enhancement, the court adopted the presentence investigation report's (PSR) discussion of Muyaba's inconsistent trial testimony.  For example, he testified he never worked for Reliable, even though, as discussed *supra*, significant evidence established that he did.  Muyaba also denied completing and signing fraudulent returns; however, that testimony conflicts with extensive evidence of fraudulent claims on returns he completed and signed.  The court ruled:  the inconsistencies in Muyaba's testimony were "material to whether he was guilty . . . of the counts . . . against him, and . . . his statements on these issues [did] not result from confusion, mistake, or faulty memory, but [were] instead a willful and deliberate attempt to obstruct justice".

No. 09-10968

### 3.

Muyaba also contends the district court erred in ordering that his sentence for count 33 be consecutive to those for counts 27-28 and 30-32. He maintains: the sentences for each count should have been grouped and ordered to run concurrently because, under Guideline § 3D1.2, those counts charged him for the same offense, violations of 26 U.S.C. § 7206(2) that were for "substantially the same harm".

Because Muyaba did not so object at sentencing, review is only for plain error. *E.g.*, *United States v. Ronquillo*, 508 F.3d 744, 748 (5th Cir. 2007). For reversible plain error, defendant must show a clear or obvious error that affects his substantial rights. *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009). If he does so, our court has discretion to correct that error, and generally will do so only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

### a.

The PSR grouped all counts as "Closely Related", including the six counts for violations of § 7206(2) (27-28 and 30-33). Because one count of conviction was for conspiracy to prepare fraudulent tax returns, Muyaba's offense level was based on the total amount of tax loss attributed to his offenses. *See* U.S.S.G. §§ 2T1.9(a)(1), 2T1.1(a)(1), 2T4.1 (Tax Table). That loss amount, combined with the enhancements discussed *supra*, resulted in Muyaba's having an advisory Guideline sentencing range of 97-121 months. In challenging his sentence, Muyaba fails to account for the mandatory requirements of Guideline § 5G1.2, which provides, *inter alia*:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts *shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.* In all other respects,

8

> sentences on all counts shall run concurrently, except
> to the extent otherwise required by law.

U.S.S.G. § 5G1.2(d) (emphasis added).

For Muyaba, the count carrying the highest statutory maximum sentence was count 1 (conspiracy to prepare fraudulent tax returns), with a statutory maximum of 60 months' imprisonment. Each of the other counts (fraudulent-tax-return preparation) had a statutory maximum of 36 months. Therefore, if the court had imposed concurrent sentences for all counts of conviction, Muyaba's total sentence would have been 60 months' imprisonment, well below his advisory range of 97 to 121 months, and in contravention of Guideline § 5G1.2(d).

### b.

Muyaba also claims ineffective assistance of counsel (IAC) because: his counsel did not object at sentencing to the sentence for count 33 being consecutive (deficient performance); and Muyaba was prejudiced because he accordingly received 24 additional months of imprisonment. *E.g.*, *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

We "resolve [IAC] claims . . . on direct appeal only in rare cases where the record allow[s] us to evaluate fairly the merits of the claim". *United States v. Higdon*, 832 F.2d 312, 314 (5th Cir.1987). This is one of those instances because the record is adequately developed. Because, as discussed *supra*, the consecutive-sentence claim has no merit, the requisite deficient performance does not exist.

### B.

Mudekunye claims: his trial should have been severed from Muyaba's; and, on two grounds, his sentence was procedurally unreasonable.

**1.**

Although Mudekunye moved to sever prior to trial, he did so only with respect to co-defendant Nichelle Henson *not* with respect to Muyaba. Nevertheless, he contends the district court erred by not severing his trial from Muyaba's, and claims resulting prejudice.  Because this issue is raised for the first time on appeal, review is only for plain error. *E.g.*, *United States v. Misher*, 99 F.3d 664, 669 (5th Cir. 1996).

Severance *vel non* is within the discretion of the district court:  it should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants", and limiting instructions to the jury will often cure any prejudice resulting from a joint trial. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  Mudekunye must show "specific and compelling prejudice against which the district court could not provide adequate protection, and that this prejudice resulted in an unfair trial". *United States v. Stouffer*, 986 F.2d 916, 924 (5th Cir. 1993).  Mudekunye fails to do so; instead, he complains generally.

As discussed, a generalized showing of prejudice is insufficient.  *E.g.*, *United States v. Solis*, 299 F.3d 420, 441 n.46 (5th Cir. 2002) ("severance issues are fact-specific, requiring a showing of specific compelling prejudice" (citation and internal quotation marks omitted)); *Stouffer*, 986 F.2d at 924.  In addition, substantial evidence directly implicating Mudekunye in the conspiracy removes any concern that not severing subjected him to "manifest injustice". *United States v. Carreon*, 11 F.3d 1225, 1240 (5th Cir. 1994).  Last, the instructions alleviated any risk of prejudice arising from a joint trial. *See United States v. Bernard*, 299 F.3d 467, 476 (5th Cir. 2002).  The jury was instructed to consider each defendant's charges separately, and this court must presume that it heard, understood, and followed those instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).  Defendants' being acquitted on some charges reflects the jury was

able to consider, and weigh separately, each of the charges. *United States v. Ellender*, 947 F.2d 748, 755 (5th Cir. 1991).

**2.**

Mudekunye contends his sentence was procedurally unreasonable because the court erroneously applied two sentencing enhancements for the same conduct. Because Mudekunye failed to raise this objection below, plain error review applies. *See United States v. Hernandez–Martinez*, 485 F.3d 270, 272–73 (5th Cir. 2007).

**a.**

Under the Guidelines, if a § 2T1.4(b)(1) enhancement is applied at sentencing, a § 3B1.3 enhancement should not be. U.S.S.G. § 2T1.4(b)(1) cmt. n.2. The Government concedes that the district court erred in applying both enhancements and that this error was clear. The application of the § 3B1.3 enhancement resulted in a total offense level of 28. Combined with Mudekunye's criminal history category of I, the application of the enhancement resulted in an advisory sentencing range of 78 to 97 months. The correct Guidelines range is 63 to 78 months. *See* U.S.S.G. Ch. 5 Pt. A (Sentencing Table). The incorrect Guidelines range (78–97 months) and the correct Guidelines range (63–78 months) overlap by one month as the top of the correct range and the bottom of the incorrect range are the same: 78 months.

**b.**

To satisfy the third prong of plain-error review, the error must have affected the defendant's substantial rights, which ordinarily requires the defendant to show that the error "affected the outcome of the district court proceedings." *United States v. John*, 597 F.3d 263, 284 (5th Cir. 2010) (quotation omitted). A sentencing error affects a defendant's substantial rights if he can show a reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence. *United States v.*

*Blocker*, 612 F.3d 413, 416-17 (5th Cir. 2010). Our precedent is clear that absent additional evidence, a defendant has shown a reasonable probability that he would have received a lesser sentence when (1) the district court mistakenly calculates the wrong Guidelines range, (2) the incorrect range is significantly higher than the true Guidelines range, and (3) the defendant is sentenced within the incorrect range. *See, e.g.*, *John*, 597 F.3d at 284–85 (holding that an imposed sentence affects a defendant's substantial rights when it significantly exceeds the high- and low-ends of applicable Guidelines range); *United States v. Jasso*, 587 F.3d 706, 713 n.10 (5th Cir. 2009) ("In cases where this Court has found plain error, the gap between the correct and erroneous sentences has been sufficient enough that there was an apparent, reasonable probability that the defendant would have received a lesser sentence but for the district court's error.") (collecting cases).

There is a second line of precedent relevant to this case. These cases hold that when the correct and incorrect ranges overlap *and the defendant is sentenced within the overlap*, "we do not assume, in the absence of additional evidence, that the sentence affects a defendant's substantial rights." *United Blocker*, 612 F.3d at 416. This default (or presumption) is undeniably sensible, because the defendant is still sentenced within the applicable Guidelines range.

Mudekunye's case does not neatly fall into either line of precedent. The correct and incorrect sentencing ranges overlap by one month, but he was sentenced well outside the one month overlap, 19 months above the correct range. No published cases have addressed the same fact scenario, but in an unpublished case, *United States v. Carrizales–Jaramillo*, we remanded for resentencing in a similar situation. 303 F. App'x 215, 217 (5th Cir. 2008) (per curiam) (unpublished) (vacating a 31-month imposed sentence based on an incorrect Guidelines calculation of 30–37 months rather than 24–30 months). While this case is not binding, it is persuasive and supports the conclusion that

the reasoning applicable to our "no overlap" line of cases best applies here. That is, where it is "not apparent from the record that [the defendant] would have received an above-Guidelines sentence," the imposed sentence affects the defendant's substantial rights. *John*, 597 F.3d at 285 (holding that a sentence 21 months above the high end and 38 months above the low end of the correct Guidelines range violated the defendant's substantial rights).

It is not apparent from the record that Mudekunye would have received an above-Guidelines sentence of 97 months if the district court had calculated the Guidelines correctly. *See John*, 587 F.3d at 285. The sentencing judge stated that Mudekunye's "sentence happens to be within the Guideline range" and that it "is the appropriate sentence in this case given all of the facts and circumstances." The government argues that these phrases indicate that the court would have imposed the same sentence regardless of the correct Guidelines range. We cannot arrive at the same conclusion. The court's comments are vague and ambiguous, in contrast to other cases in which we have held that the court's statements eliminate any reasonable probability of a lesser sentence. In these cases, the sentencing court stated explicitly and unequivocally that the imposed sentence was the correct sentence regardless of the applicable Guideline ranges. *See United States v. Bonilla*, 524 F.3d 647, 656 (5th Cir. 2008) (finding that district court imposed a valid alternative non-Guidelines sentence when it considered the correct and incorrect ranges and stated: "I believe that I have calculated the guidelines correctly, but even if I am wrong about the guidelines, this is the sentence that I would impose in any event."); *United States v. Lemus-Gonzalez*, 563 F.3d 88, 94 (5th Cir. 2009) (finding no reasonable probability of a lesser sentence where the district court considered *both* the correct and incorrect ranges and stated that it would have imposed the same sentence in any event). The record does not establish that Mudekunye would

have received an above-Guidelines sentence of 97 months if the district court had calculated the Guidelines correctly.

In light of the significant disparity between Mudekunye's sentence and the top of the correct Guidelines range and the absence of any evidence suggesting that the court would have sentenced Mudekunye to 97 months' imprisonment irrespective of the correct Guidelines range, Mudekunye has shown a reasonable probability of a lesser sentence and therefore, demonstrated that the court's clear error affected his substantial rights.

**c.**

Even where a defendant's substantial rights are violated, our court retains discretion to correct the reversible plain error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Puckett*, 129 S. Ct. at 1429. The substantial disparity between the imposed sentence and the applicable Guidelines range warrants the exercise of our discretion to correct the error. *See United States v. Gonzalez–Terrazas*, 529 F.3d 293, 299 (5th Cir. 2008) (concluding that the imposition of a sentence that was substantially greater than the Guidelines range affected the defendant's substantial rights and the fairness of the judicial proceedings). We vacate Mudekunye's sentence and remand for resentencing.[1]

**III.**

For the foregoing reasons, we AFFIRM on every ground with the exception of Mudekunye's sentence which we VACATE and REMAND for resentencing.

---

[1] Because we vacate and remand for resentencing, we need not address Mudekunye's argument that his sentence was procedurally unreasonable because the sentencing court treated the Guidelines as mandatory and ignored mitigating factors.

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting in part:

I dissent only from the majority's, under plain-error review, requiring resentencing for Mudekunye (part II.B.2.). It has been almost 20 years since *United States v. Olano*, 507 U.S. 725 (1993), clarified application of plain-error review. And, for reviewing sentences imposed through application of the Sentencing Guidelines, it has been over six years since *United States v. Booker*, 543 U.S. 220 (2005), held the Guidelines are only advisory. In the light of *Olano* and *Booker*, it would seem that plain-error review would have been simplified and made more flexible. Unfortunately, if not amazingly, just the opposite has occurred.

This is vividly reflected in the majority's analysis and holding for Mudekunye's sentence, through which it seeks to apply the Supreme Court's and our precedent. It's time for our court to step back, re-examine, and simplify this important and all too often complex aspect for applying plain-error review to sentences imposed under the *advisory* Guidelines. Accordingly, I urge our court to review *en banc* this part of the majority opinion.

In vacating Mudekunye's sentence, the majority emasculates the plain-error standard of review by applying it in a manner inconsistent with the Supreme Court's and our precedent. In an area of law it admits is unclear, the majority effectively creates a new rule: where defendant's imposed sentence lies outside the correct *advisory* Guidelines sentencing range, defendant *must* be resentenced in district court. This rule is neither supported by precedent nor justified under plain-error doctrine. The majority's strained insistence on resentencing reflects that, within our circuit, plain-error review, in this context, has been weakened to the point of toothlessness, thereby defeating its many important and salutary purposes, including "to induce the timely raising of claims and objections . . . ." *Puckett v. United States*, 129 S. Ct. 1423, 1428 (2009).

**I.**

From 2004 to 2007, Mudekunye and Muyaba, with others, were tax preparers at Reliable Express Tax Services, in Dallas, Texas. Mudekunye was one of two primary preparers. In 2007, Muyaba began operating Efficient Tax Services, where he and Mudekunye conducted a similar business. Throughout, Mudekunye, Muyaba, and others, participated in a tax-return scheme, falsely claiming (frequently without their clients' knowledge) dependants, business expenses, filing status, and tax credits; they also charged exorbitant fees against their clients' refund checks.

Mudekunye, Muyaba, and three co-defendants were charged in a 39-count indictment. A jury found Mudekunye guilty on six counts, including conspiracy, preparation of false income taxes, and identity fraud; Muyaba was found guilty on seven similar counts. Mudekunye was sentenced, *inter alia*, to 97-months' imprisonment; Muyaba, to 120.

The district judge who sentenced Mudekunye had presided at his trial. For Mudekunye's offense level for computing his advisory Guidelines sentencing range, the district court adopted the calculation in the presentence investigation report (PSR): a criminal history category level I and an offense level 28, resulting in an advisory sentencing range of 78 to 97 months. As discussed in the majority opinion at 11, in determining that offense level, the district court erroneously applied two Guidelines sentencing enhancements for the same conduct. But for this error, Mudekunye's offense level would have been two levels lower, resulting in an advisory sentencing range of 63 to 78 months—with a one-month overlap at 78 months between the correct and incorrect ranges.

In sentencing Mudekunye, the district court considered: trial evidence; 18 U.S.C. § 3553(a)'s sentencing factors; adopted PSR fact-findings; the Guidelines' being advisory; and Mudekunye's request for a sentence at the bottom of the advisory sentencing range. The PSR included information that Mudekunye filed fraudulent tax returns from 2003 until late 2008, for an IRS tax loss of

$3,426,916 (a "conservative estimate" because it did not include a variety of falsely-claimed credits).  In the light of those many factors, the district court concluded a 97-month sentence was "appropriate" and stated: "In addition, this sentence happens to be within the guideline range . . . ."

## II.

Undisputed is the standard of review—plain error.  For understanding how our court has strayed from the limited role intended for such review, it is helpful first to recall its history through the landmark *Olano* decision in 1993.

## A.

Plain-error review is grounded in Federal Rule of Criminal Procedure 52, which took effect in 1944 and concerns application of harmless  and plain error. For harmless error, the original Rule 52 provided:  "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded"; but, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court".  FED. R. CRIM. P. 52 (a)-(b) (1944).

The harmless-error portion of the Rule has not been substantively amended; the plain-error portion has been and now provides: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention".  FED. R. CRIM. P. 52(b) (2002).  (Following *Olano*, Rule 52(b) was amended by removing the words "or defect", reflecting that Rule 52(b) was not to be read in the disjunctive.  FED. R. CRIM. P. 52(b) advisory committee notes.)

The plain-error portion of the Rule codified the doctrine that had previously existed only in common law. *Id.*  That doctrine provided: "[I]f a plain error was committed in a matter so absolutely vital to defendants, [appellate courts are] *at liberty* to correct it".  *Wiborg v. United States*, 163 U.S. 632, 658 (1896) (emphasis added) (evidence showed jury instructions insufficient to sustain conviction).  The concept of being able to correct plain error is found four

years earlier, in two dissents in *O'Neil v. State of Vermont*, 144 U.S. 323, 360,370 (1892). Justice Field, dissented from the Court's dismissing for lack of federal jurisdiction and stated: "I think . . . that this court . . . should take notice of the error of its own motion; for, if the denial by the court below of the immunity claimed against the cruel and unusual punishment imposed was an error, it was one of the gravest character, leaving the defendant to a life of misery, —one of perpetual imprisonment and hard labor". *Id.* at 364-65. Justice Harlan echoed this view in his dissent. *Id.* at 370-71.

Although the plain-error doctrine was, in the beginning, somewhat loosely defined, the Supreme Court was consistent in its limited use to reverse verdicts. The Court generally believed it appropriate where there was either a clear lack of evidence supporting a jury conviction or an erroneous jury instruction. *See, e.g., Wiborg*, 163 U.S. at 658 (reversing judgment where no evidence showed captain's mates had knowledge of criminal act); *see also Clyatt v. United States*, 197 U.S. 207, 221-22 (1905) (remand required where "there [wa]s not a scintilla of testimony" supporting defendant's conviction); *Brasfield v. United States*, 272 U.S. 448, 450 (1926) (judge's polling jurors during their deliberations created specter of juror-coercion); *Weems v. United States*, 217 U.S. 349, 362, 382 (1910) (holding statute unconstitutional). The plain-error doctrine empowered the Court to "examin[e] th[e] record for the purpose of determining whether there is any substantial evidence to be found in it to warrant the conviction of [a] defendant . . . ." *Valdez v. United States*, 244 U.S. 432, 449 (1917) (Clarke, J., dissenting) (citing *Diaz v. United States*, 223 U.S. 442, 459 (1912) (evidence sufficient to sustain conviction); *Clyatt*, 197 U.S. at 207; *Wiborg*, 163 U.S. at 658). (Under our current doctrine, failure to request a judgment of acquittal for insufficient evidence is *not* reviewed for plain error; instead it is reviewed under a far more strict standard—manifest miscarriage of justice. *E.g., United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007); *United States v. Pierre*, 958 F.2d 1304, 1310-11 (5th Cir. 1992).)

Eight years before Rule 52(b) went into effect, the Court, in *United States v. Atkinson*, 297 U.S. 157 (1936), denied the Government's claims of reversible error, and, in doing so, initially defined the parameters of current plain-error review. *Atkinson* stated that, only "[i]n exceptional circumstances" may courts of appeals consider objections not raised in district court. *Atkinson*, 297 U.S. at 160. In language adopted almost 60 years later in *Olano*, the *Atkinson* Court held plain-error review could be utilized "if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings". *Id.* Otherwise, jury verdicts may not be set aside for errors not presented to the trial court, a practice "founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact". *Id.* at 159.

As noted, Rule 52(b), enacted in 1944, codified the plain-error doctrine. Between 1944 and 1982, the Court applied Rule 52(b) in a manner consistent with the doctrine that predated its taking effect. *See, e.g.*, *United States v. Park*, 421 U.S. 658, 675-76 (1975) (jury instructions, based on entirety of record, sufficient to sustain conviction); *Fisher v. United States*, 328 U.S. 463, 469-70 (1946) (jury instructions sufficient to sustain conviction and sentence).

As also noted, at its inception, Rule 52 did not define the phrase "affecting substantial rights"—nor does it do so now. The Court, however, in *Kotteakos v. United States*, 328 U.S. 750, 757 n.9, 775-76 (1946), indicated that the "affecting substantial rights" portion of Rule 52 (both harmless error under part (a) and plain error under part (b)) meant "the error had substantial and injurious effect or influence in determining the jury's verdict". The Court has since noted that the affecting-substantial-rights standard from *Kotteakos* has evolved into "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different". *United States v. Dominguez Benitez*, 542 U.S. 74, 81-82 (2004) (citation and internal quotation marks omitted). The latter is addressed in the substantial-rights prong of current plain-error review, discussed *infra*.

In *United States v. Frady*, 456 U.S. 152, 163-66 (1982), the Court reinforced the limits of Rule 52(b).  In ruling that the plain-error standard of review was inapplicable to collateral review of a criminal conviction, the Court noted that Rule 52(b) grants "courts of appeals the latitude to correct particularly egregious errors on appeal" and "reflects a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed".  *Id.* at 163.  The Court cautioned, however, that "Rule 52(b) is to be used sparingly, *solely* in those circumstances in which a miscarriage of justice would otherwise result".  *Id.* at 163 n.14 (emphasis added) (citing *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir. 1980)).  "The intention of [Rule 52(b)] is to serve the ends of justice; therefore it is invoked *only in exceptional circumstances* where necessary to avoid a miscarriage of justice."  *Id.* (emphasis added) (citation and internal quotation marks omitted).

The Court subsequently noted that the "miscarriage of justice" standard articulated in *Frady* was synonymous with that from *Atkinson* ("seriously affect the fairness, integrity or public reputation of judicial proceedings").  *United States v. Young*, 470 U.S. 1, 15 (1985) (holding alleged prosecutorial misconduct not reversible plain error).  In describing the parameters of plain-error review (whether the error seriously affected substantial rights and had an unfair prejudicial impact on juror deliberations), the *Young* Court first cautioned against a *per se*, *i.e.*, categorical, approach to plain-error review:  "An error . . . must be more than obvious or readily apparent . . . to trigger appellate review under [Rule] 52(b)".  *Id.* at 16 n.14.  "To do otherwise could well lead to having appellate courts indulge in the pointless exercise of reviewing harmless plain errors—a practice that is contrary to the draftsmen's intention behind Rule 52(b) . . . ."  *Id.* (internal quotation marks omitted).  (Post-*Olano*, the Court again cautioned against this *per se* approach in *Puckett v. United States*, 129 S. Ct. 1423, 1433 (2009), citing *Young*, 470 U.S. at 16 n.14.)

As noted, in *Olano*, the Court in 1993 clarified and made uniform "the standard for 'plain error' review by the courts of appeals under Rule 52(b)". *Olano*, 507 U.S. at 731. Prior to *Olano*, our court had been in-step with the Supreme Court regarding plain error's being used sparingly. This court was mindful of the policy underpinnings of plain-error review: "promoting the economy of judicial resources and maintaining the distinct institutional roles of trial courts and appellate courts . . . ." *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991) (citation and internal quotation marks omitted). Our court also noted the limited nature of reversal under the plain-error standard of review: "it is invoked 'only in exceptional circumstances (where necessary) to avoid a miscarriage of justice'". *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir. 1980) (quoting *Eaton v. United States*, 398 F.2d 485, 486 (5th Cir. 1968)); *see also Lopez*, 923 F.2d at 50 (questions of fact can never constitute plain error); *United States v. Brown*, 555 F.2d 407, 420 (5th Cir. 1977) (constitutional errors noticed more freely than less serious ones). Moreover, our court was mindful that plain-error review depended upon the facts and circumstances of the case, *Sykes v. United States*, 373 F.2d 607, 612 (5th Cir. 1966); and "[t]here is no hard and fast rule for determining whether error is plain". *Gerald*, 624 F.2d at 1299. By 1993, our rule for plain-error review was: "Plain error is error which, when examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings". *United States v. Vontsteen*, 950 F.2d 1086, 1092 (5th Cir. 1992) (en banc) (citation and internal quotation marks omitted).

In 1993, in *Olano*, in reversing a circuit court's employing plain-error review to overturn convictions, the Court held the presence of alternate jurors among a deliberating jury was not reversible plain error. *Olano*, 507 U.S. at 741. In articulating what was to become the well-known, four-prong framework for plain-error review, Justice O'Connor reflected upon the doctrine's history and emphasized that plain-error review provides courts of appeals only with "limited power" to correct forfeited (as opposed to waived) error. *Id.* at 731.

The Court explained that forfeited error occurs when defendant fails to make a timely objection to a court's deviation from a legal rule; on the other hand, "waiver is the *intentional* relinquishment or abandonment of a known right". *Id.* at 733 (emphasis added) (internal citation and quotation marks omitted). "If a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule, then there has been an 'error' within the meaning of Rule 52(b) despite the absence of a timely objection." *Id.* at 733-34.

That four-prong framework provides: first, there must be error; second, that error must be "plain"—"clear or obvious"—meaning not up for reasonable debate; third, that plain error must have violated defendant's substantial rights; and fourth, if the first three prongs are satisfied (reversible plain error), the courts of appeals *may* exercise their "remedial discretion" *only* "if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings'". *Id.* at 732-736 (quoting *Atkinson*, 297 U.S. at 160); *see also Puckett*, 129 S. Ct. at 1429. The use of "only" as a qualifier for "seriously affects the fairness, integrity, or public reputation of judicial proceedings" first appeared in *Johnson v. United States*, 520 U.S. 461, 467 (1997).

In any event, *Olano* clearly established that remand *may* be appropriate only where the reversible plain error impacts this discretionary fourth prong, *i.e.*, seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Olano*, 507 U.S. at 736. In addition, Justice O'Connor explained why this fourth prong's definition is *not* the "miscarriage of justice" standard. *Id.* On this final, discretionary, prong, the *Olano* Court emphasized the continuity in its application of plain-error review: "[T]he standard laid down in *United States v. Atkinson*, was codified in Federal Rule of Criminal Procedure 52(b), and we repeatedly have quoted the *Atkinson* language in describing plain-error review". *Olano*, 507 U.S. at 736 (citations and internal quotation marks

omitted). Without satisfying the *Atkinson* standard, "the discretion afforded by Rule 52(b) would be illusory". *Id.*

## B.

For Mudekunye, those first two prongs of plain-error review (an *error* in applying the two enhancements that was *clear or obvious*) are not at issue. The majority's application of the third and fourth prongs flies in the face of each prong and is contrary to both the limited role for plain-error review and the discretion and flexibility accorded it.

## 1.

Under *Olano*'s third prong, for reversible plain error, the clear or obvious error ("plain error" upon analysis of the first two prongs) must "affect substantial rights", generally meaning defendant must demonstrate that the error "must have affected the outcome of the district court proceedings". *United States v. Mares*, 402 F.3d 511, 521 (5th Cir. 2005) (quoting *Olano*, 507 U.S. at 734). In the sentencing context, following the 2005 holding in *Booker*, 543 U.S. at 245, that the Guidelines are only advisory, our court has interpreted that outcome-determinative consideration for the third prong to mean "whether the defendant can show a *reasonable probability* that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence". *United States v. Villegas*, 404 F.3d 355, 364-65 (5th Cir. 2005) (emphasis added). (As noted recently by our court, and discussed *infra*, it is unclear whether a different, pre-*Booker*, standard for evaluating a sentencing error's effect on substantial rights remains in effect: "if the case were remanded, the trial judge could reinstate the same sentence". *United States v. Davis*, 602 F.3d 643, 647 n.6 (5th Cir. 2010) (quoting *United States v. Ravitch*, 128 F.3d 865, 869 (5th Cir. 1997)).)

For Rule 52(a) harmless-error review, the Government bears the burden of showing the error was harmless beyond a reasonable doubt; however, for Rule

52(b)'s plain-error review, it is the *defendant* who bears the burden of persuasion with respect to the prejudice (third) prong. *Olano*, 507 U.S. at 734. And, "that burden should not be too easy". *Dominguez Benitez*, 542 U.S. at 82. "Otherwise, the prejudice standard would not serve its purpose of 'enforc[ing] the policies that underpin [plain-error review] generally, to encourage timely objections and reduce wasteful reverses by demanding strenuous exertion to get relief for unpreserved error.'" *Mares*, 402 F.3d at 521 (quoting *Dominguez Benitez*, 542 U.S. at 82).

In sentencing Mudekunye, the district court was very thorough. It received evidence, including testimony, concerning the tax-loss amount attributable to Mudekunye's conduct ($3,426,916), and found that the calculations used in the PSR were reasonable and accounted for a complete loss to the Government. In addition, the court heard testimony from two witnesses concerning Mudekunye's personal history and characteristics, and considered letters pleading for leniency on his behalf. Moreover, Mudekunkye requested a sentence at the bottom of the calculated advisory Guidelines sentencing range (78 months), contending he did not do "anything that would suggest that his sentence should be any higher than that".

After considering the facts contained in the PSR, Mudekunye's objections, character witnesses, and his request for a 78-month sentence, the district court imposed a 97-month sentence, which the court described as "reasonable" based upon "the evidence that I have heard at trial and those [sentencing] matters I'm required to take into account under Section 3553(a)". The court added: "I believe this is the appropriate sentence in this case given all of the facts and circumstances and that this sentence is sufficient but not greater than necessary to comply with the statutory purposes of sentencing after reviewing all of the factors required to be considered". It then stated : "In addition, this sentence

happens to be within the guideline range and that range does not exceed 24 months". (Where defendant is sentenced within an advisory Guidelines sentencing range, and if that range exceeds 24 months, the court must provide the reasons for imposing that sentence. 18 U.S.C. § 3553(c)(1). In any event, as shown above, those reasons were given.)

Here, in holding that Mudekunye's substantial rights were affected, the majority fails to consider his burden of persuasion (the majority correctly states the rule, but ignores it, *Maj. Opn.* at 11). In essence, the majority attempts improperly to satisfy Mudekunye's burden for him. Defendant's burden, under the third prong, requires

> the defendant to show that the error actually did make a difference: if it is equally plausible that the error worked in favor of the defense, the defendant loses; if the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses.

*Mares*, 402 F.3d at 521 (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005)); *see also United States v. Jones*, 444 F.3d 430, 443 (5th Cir. 2006). "[A] defendant normally 'must make a specific showing of prejudice' in order to obtain relief". *Puckett*, 129 S. Ct. at 1433 (quoting *Olano*, 507 U.S. at 735). The majority has turned the defendant's third-prong burden on its head. Instead of addressing what defendant has shown in attempting to satisfy his burden, the majority states only that, "where it is not apparent from the record that the defendant would have received an above-Guidelines sentence [a sentence above a correctly calculated advisory sentencing range], the imposed sentence affects the defendant's substantial rights" and then places the burden on the *Government* to show support in the record for a sentence imposed above the correct range. *Maj. Opn.* at 13 (citation and internal quotation marks omitted). Thus, the majority has flipped the third-prong of plain-error review.

According to the majority, unless the *Government* can show otherwise, being sentenced above the correct range constitutes error affecting defendant's substantial rights. *Id.* at 13-14.

As for the majority's attempting to satisfy Mudekunye's burden for him, his opening brief does not even begin to show his substantial rights were affected. In an argument of just over one page, Mudekunye concedes the error was not preserved in district court and asserts only that, nevertheless, "this error must result in a new sentencing hearing". Re-stated, his brief simply asserts: he was sentenced under the wrong advisory Guidelines sentencing range; and, therefore, he is entitled to resentencing.

Moreover, Mudekunye did *not* file a reply brief. Accordingly, he did not reply to the Government's thorough briefing on why he failed to show reversible plain error and why, even if he had, we should not exercise our discretion to correct it.

In short, it is the majority, not Mudekunye, who references the record evidence: "It is not apparent from the record that Mudekunye would have received an above-Guidelines sentence of 97 months if the district court had calculated the Guidelines correctly". *Id.* at 13. Along this line, Justice Cardozo admonished that a judge "is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness". BENJAMIN N. CARDOZO, THE NATURE OF THE JUDICIAL PROCESS 141 (1921); *see also United States v. John*, 597 F.3d 263, 292 (5th Cir. 2010) (Smith, J., dissenting) ("Judges are not like pigs, hunting for truffles . . . ." (citations and internal quotation marks omitted)). Simply put, our role is not to satisfy Mudekunye's affected-substantial-rights prong for him.

Properly placing that burden upon defendant—as is clearly required—yields a different result. Mudekunye shows only that he was sentenced under an incorrect advisory Guidelines sentencing range; but, being

sentenced outside the correct range does not, *ipso facto*, affect his substantial rights. Post-*Booker*, an advisory Guidelines sentencing-range calculation is just "one factor that a district court must consider in its [18 U.S.C.] § 3553(a) analysis . . . ." *Davis*, 602 F.3d at 649 n.9 (noting that, by itself, erroneous Guidelines sentencing-range selection *not necessarily sufficient* for error to affect substantial rights). And, as the majority admits, our precedent is unclear on whether defendant's substantial rights are affected where the correct and incorrect sentencing ranges overlap and defendant is sentenced outside that overlap:  "Mudekunye's case does not neatly fall into either line of [our] precedent". *Maj. Opn.* at 12.

A more complete (and proper) evaluation of the record shows that Mudekunye has *not* met his heavy burden of persuasion. The majority either glosses over or chooses to ignore:  Mudekunye's asking for a sentence at the bottom of the (now incorrect) advisory sentencing range and the district court's instead deciding to sentence him at the top of that range; the court's *clear* statement treating the Guidelines as advisory only; the correct and incorrect *advisory* ranges overlapping one another; the district court's adopting the facts and findings of the PSR; and the district court's stating that Mudekunye's sentence "is the appropriate sentence in this case given all of the facts and circumstances" and "[i]n addition . . . *happens* to be within the guideline range". (Emphasis added.)

The majority at 13 considers "vague" these "appropriate sentence . . . given all of the facts and circumstances" and "happens to be within the guideline range" statements, because the district court did not add that it would impose the same sentence even if it were not within a correct range. *Id.* But words have meaning; and, as an appellate court, we must presume that the sentencing court meant what it said. It would go beyond frustrating the purposes of the judicial

process for our court to guess at what the sentencing court did, and did not, "mean". In the light of the foregoing, Mudekunye, at best, can show (and does not even attempt to do so) only that the impact of the error is perhaps uncertain—in which instance he has *not* established that the error affected his substantial rights. *See Jones*, 444 F.3d at 443 ("At best, the record indicates that it is equally plausible that the district court would have imposed the same sentence as it is plausible that the court would not have." (citing *Mares*, 402 F.3d at 521)).

As stated, the majority appears to conclude that, in this instance, remand would not be required had the district court either: (1) been more explicit in its desire to impose the 97-month sentence regardless of the advisory Guidelines; or (2) calculated both the correct and incorrect sentencing ranges before imposing sentence. *Maj. Opn.* at 13. In doing so, the majority cites *United States v. Lemus-Gonzalez*, 563 F.3d 88, 91, 94 (5th Cir. 2009) (court considered both correct and incorrect ranges and stated it would impose same sentence "should it turn out that the court is wrong") and *United States v. Bonilla*, 524 F.3d 647, 656-57 (5th Cir. 2008) (finding remand unnecessary where court considered correct and incorrect ranges, imposed sentence, and stated: "this is the sentence that I would impose in any event").

For starters, neither *Bonilla* nor *Lemus-Gonzalez* applied plain-error review; in each instance, the issue was preserved in district court. Moreover, the majority's conclusions based upon these cases are non-sensical. First, I am at a loss for what else the district court here could have meant in saying that the sentence was appropriate "given all of the facts and circumstances" and "happens to be within the guideline range". Second, the majority essentially requires a sentencing court to: (1) recognize its error *sua sponte*; and (2) create two sentences—one desired and one conditional—with the conditional to be used

only if the desired sentence is not free from error.  In my view, that places an unnecessary and unrealistic burden upon the district court.

## 2.

Even assuming Mudekunye's substantial rights were affected, his sentence should not be vacated.  As discussed, the fourth, and *discretionary*, prong of plain-error review provides:  even if defendant has satisfied the first three prongs, we retain discretion to correct the error and should do so *only* if it "seriously affects the fairness, integrity or public reputation of judicial proceedings".  *Olano*, 507 U.S. at 736 (citation and internal quotation marks omitted).  As discussed *supra*, *Olano* did not expressly use the word "only" for correcting a reversible plain error when it "seriously affects the fairness, integrity or public reputation of judicial proceedings".  *Id.*  Since then, however, the Supreme Court has added "only" to the fourth prong:  "An appellate court should exercise its discretion to correct plain error *only* if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings".  *Jones v. United States*, 527 U.S. 373, 389 (1999) (emphasis added) (quoting *Olano*, 507 U.S. at 736).  "The fourth prong is meant to be applied on a case-specific and fact-intensive basis."  *Puckett*, 129 S. Ct. at 1433 (noting *per se* approach is flawed and countervailing factors should be considered); *see also United States v. Calverley*, 37 F.3d 160, 164 (5th Cir. 1994) (en banc) ("The appellate courts must determine whether the facts of the particular case warrant remediation."), *abrogated  on other grounds by United States v. Dupre*, 117 F.3d 810, 817 (5th Cir. 1997); *United States v. Rodriguez,* 15 F.3d 408, 416 (5th Cir. 1994) ("the ultimate decision whether . . . to take notice of an error not raised below must depend on the facts of the particular case" (quoting *United States v. Morales*, 477 F.2d 1309, 1315 (5th Cir. 1973))).

As noted, this is a discretionary, not mandatory, prong, and informs our court that remand "should be employed in those circumstances in which a miscarriage of justice would otherwise result". *Olano*, 507 U.S. at 735-36 (citation and internal quotation marks omitted) (stating this prong is "permissive" and "the court of appeals has authority to order correction, but is not required to do so"). Without an exacting and limited application of this prong, it becomes "illusory". *Id.* at 737. In short, "[m]eeting all four prongs is difficult, as it should be". *Puckett*, 129 S. Ct. at 1429 (citation and internal quotation marks omitted).

In addressing the fourth prong, the majority notes our court's discretion to correct reversible plain error, and then states: "The substantial disparity between the imposed sentence and the applicable Guidelines range warrants the exercise of our discretion to correct the error". *Maj. Opn.* at 14. It states no more, other than citing *United States v. Gonzalez-Terrazas*, 529 F.3d 293, 298-99 (5th Cir. 2008), in which defendant was sentenced at the bottom of an incorrect advisory sentencing range; the imposed sentence was 33 months above the bottom of the correct, and lower, range.

Here, the majority utterly fails to conduct any sort of fact-intensive inquiry. *See Puckett* at 1433. Instead, it assumes that, because there is a "substantial disparity" between the imposed sentence and the correct sentencing range, our court must, *ipso facto*, use its discretion and remand for resentencing. *Maj. Opn.* at 14 ("The substantial disparity between the imposed sentence and the applicable Guidelines range warrants the exercise of our discretion to correct the error."). In so ruling, the majority has folded the fourth-prong of our plain-error review inquiry into the third prong, thereby making the fourth prong—just as *Olano* warned—"illusory". *Olano*, 507 U.S. at 736; *John*, 597 F.3d at 290 (Smith, J., dissenting) ("By such reasoning, the fourth prong is collapsed into the

third, further weakening the test."); *see also Davis*, 602 F.3d at 651 n.12 (noting that only under a mandatory-Guidelines regime is remand required whenever error clearly affected defendant's sentence and cautioning that *United States v. Price*, 516 F.3d 285 (2008), does not categorically require remand wherever a probability of a lesser sentence is found).

A more thorough (and, in my view, correct) review of the record mandates that, under our discretion, resentencing is *not* required. *See Young*, 470 U.S. at 16 ("Especially when addressing plain error, a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record.")   For example, Muyaba filed false tax returns from 2005 until late 2008, for an IRS tax loss of $2,661,060; Mudekunye did so from 2003 until late 2008 with an IRS tax loss of $3,426,916 ("conservative estimate").   Nevertheless, Mudekunye's challenged 97-month sentence is substantially less than Muyaba's for 120 months.   Mudekunye's activities, however, were essentially the same as Muyaba's:  unlike Mudekunye, Muyaba had a leadership role at Efficient; but, unlike Muyaba, Mudekunye was convicted of two counts of identify theft, and, as noted, was responsible for a considerably higher tax loss than Muyaba.

In the light of Mudekunye's criminal conduct, this is not the appropriate instance for us to exercise our *discretion* and require resentencing; in the light of the *entire* record, the district court's error did not rise to the level of being "particularly egregious".   *Frady*, 456 U.S. at 163.   Therefore, even assuming reversible plain error, it falls far short of *seriously* affecting the fairness, integrity, or public reputation of judicial proceedings. *See John*, 597 F.3d at 290 (Smith, J., dissenting).

Regardless, the point remains:  in failing to conduct a fact-intensive inquiry, the majority fails to conduct plain-error review.  *See also id.* at 291 (Smith, J., dissenting) ("[G]ranting relief under the fourth prong is wholly

discretionary and . . . must be done on a case-by-case basis . . . [;] we are not tethered to what other panels of this court have done in deciding whether to exercise their discretion in other cases, similar or not".).

## C.

Because the majority vacates Mudekunye's sentence due to the district court's erroneous application of two enhancements, instead of one, it does not address Mudekunye's contending, in the alternative, that the sentence is greater than necessary. *Maj. Opn.* at 14 n.2. Because Mudekunye's first challenge to his sentence fails, it is necessary to address his second:  that his sentence was procedurally unreasonable because the district court, according to Mudekunye, treated his advisory sentencing range as mandatory and ignored mitigating factors—his history and characteristics.

Mudekunye contends he preserved this second procedural challenge at sentencing by, as noted *supra*, requesting a below-range sentence. That, however, does *not* constitute the contention presented here. *United States v. Garcia-Bahena*, No. 10-10355, 2010 WL 4740317, at *1 (5th Cir. 23 Nov. 2010); *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009) (defendant must raise procedural objection in district court so it may correct itself). Therefore, plain-error review again applies. *E.g.*, *United States v. Peltier*, 505 F.3d 389, 391-92 (5th Cir. 2007).

The record reflects that the district court expressly treated the Guidelines as advisory and considered, *inter alia*, defendant's history and characteristics. Accordingly, Mudekunye does not get past the first prong of plain-error review: he fails to show error by the court in its consideration of § 3553(a). *See United States v. Smith*, 440 F.3d 704, 707-08 (5th Cir. 2006).

## D.

This is yet another instance revealing the confused status and application of our circuit's precedent for plain-error review. *See Davis*, 602 F.3d at 651

(noting case law unsettled as to whether "precedent requires remand whenever an appellant can show a reasonable probability that an unpreserved error affected the sentence"); *John*, 597 F.3d at 290 (Smith, J., dissenting) ("question that this circuit has not definitively resolved, which is the extent of the deviation from the proper guideline range necessary for [a sentencing] error to 'affect substantial rights'"); *United States v. Ellis*, 564 F.3d 370, 378 (5th Cir. 2009) ("we are not convinced that the case law on this point is settled or as categorical as language in some cases might make it seem"); *Price*, 516 F.3d at 289 n.28 (noting "the potential conflict between pre- and post-*Booker* decisions addressing the question of 'affecting substantial rights'"). And our circuit is not alone in this regard. *See United States v. Langford*, 516 F.3d 205, 222-24 (3d Cir. 2008) (Weis, J., dissenting) (noting problems in post-*Booker* line of cases between Guidelines-calculation errors and reasonable sentences under plain-error review).

The following provides a vivid example of our confused precedent. As noted, in *Price* (2008), our pre-*Booker* line of cases applied an objective test for whether defendant's substantial rights were affected by a misapplication of a sentencing-Guidelines enhancement: if, on remand, "the judge *could* reinstate the sentence, we held, we would find no [third-prong] prejudice under plain error review". *Price*, 516 F.3d at 289 n.28 (emphasis in original). *Price* noted that, under our post-*Booker* line of cases, however, that test has become more subjective: "'whether the defendant can show a reasonable probability that, but for the district court's misapplication of the Guidelines, [the defendant] would have received a lesser sentence'". *Id.* (quoting *Villegas* (2005), 404 F.3d at 364). *Price* noted that our court would eventually have to address the potential conflict between the subjective versus objective inquiries when faced with "a closer question of 'substantial rights'". *Id.*; *see also Jones* (2006), 444 F.3d at 438 ("We need not resolve whether the two can be harmonized or which standard governs

33

because a remand is not required under either.") *Davis* (2010) noted that, although the substantial-rights standard from *Villegas* was written post-*Booker*, it concerned a pre-*Booker* sentencing, under then-mandatory Guidelines. *Davis*, 602 F.3d at 651 n.12. The *Villegas* standard is cited in *United States v. Blocker*, 612 F.3d 413, 416-17 (5th Cir. 2010), which is, in turn, cited by the majority at 11-12.

In recent opinions show, our court has become increasingly "generous with remand" in addressing sentencing errors under plain-error review. As *Ellis* reminded and cautioned:

> Not every error that increases a sentence need be corrected by a call upon plain error doctrine. It bears emphasis that all defendants' appeals challenging a sentence rest on the practical premise that the sentence should be less. The doctrine of plain error serves powerful institutional interests, including securing the role of the United States District Court as the court of first instance, as opposed to a body charged to make recommendations to appellate courts. And even if an increase in a sentence be seen as inevitably 'substantial' in one sense it does not inevitably affect the fairness, integrity, or public reputation of judicial process and proceedings. To conclude that not correcting the error claimed here casts doubt upon the fairness, integrity, or public reputation of the proceeding drains all content from the doctrine of plain error.

*Ellis*, 564 F.3d at 378-79.

In the sentencing context, plain-error review has been watered down by years of, in my view, incorrect application. Post-*Booker*, our court has, as discussed by the majority, applied at least two *per se* rules with respect to sentencing errors and our review under the plain-error standard. The first is: when defendant's sentence falls within an incorrect advisory Guidelines sentencing range that is higher than the correct range, and there is *no* overlap between the two, defendant has shown a reasonable probability that he would

have received a lesser sentence absent additional evidence to the contrary. *Maj. Opn.* at 12; *see, e.g., John*, 597 F.3d at 284-85. The second is: "when the correct and incorrect ranges overlap and the defendant is sentenced within the overlap, we do not assume, in the absence of additional evidence, that the sentence affects a defendant's substantial rights". *Maj. Opn.* at 12 (emphasis, citation, and internal question marks omitted). Yet, the Supreme Court has specifically rejected using *per se* rules under the plain-error standard. *Puckett*, 129 S. Ct. at 1433 ("We have emphasized that a '*per se* approach to plain-error review is flawed.'" (quoting *Young*, 470 U.S. at 17)). "'The plain error rule is not a run-of-the-mill remedy.'" *Frady*, 456 U.S. at 163 n.14 (quoting *Gerald*, 624 F.2d at 1299).

Along those lines, in applying plain-error review post-*Booker*, our court has generated significant variance in measuring the severity of a sentence-increase necessary to affect defendant's substantial rights where the Guidelines were erroneously applied. *See, e.g., Blocker*, 612 F.3d at 417 (defendant's substantial rights not affected after receiving erroneous two-point increase to criminal-history score); *United States v. Sandlin*, 589 F.3d 749, 757-58 (5th Cir. 2009) (following downward departure, defendant's substantial rights affected because of erroneous 17-level increase to offense level); *United States v. Sanchez*, 527 F.3d 463, 466 (5th Cir. 2008) (substantial rights affected because sentence more than double the correct range); *Price*, 516 F.3d at 289 n.28 (substantial rights affected because of 18-month disparity between the *bottom* of the correct and incorrect ranges); *John*, 597 F.3d at 285 (substantial rights affected because defendant's 108-month sentence exceeded *top* of correct range by 21 months); *United States v. Gonzalez*, 253 F. App'x 387, 388 (5th Cir. 2007) (substantial rights not affected where sentence exceeded correct range by 12 months); *United States v. Jones*, 489 F.3d 679, 682 (5th Cir. 2007) (regardless of third-prong analysis, defendant's receiving sentence 23 months above erroneous sentencing

range did not affect fairness, integrity, or public reputation of judicial proceedings); *United States v. Severin*, 221 F. App'x 299, 303 (5th Cir. 2006) (substantial rights affected because defendant's sentence three months in excess of correct range); *Jones*, 444 F.3d at 438-39 (based on the record, substantial rights not affected where district court could reasonably impose maximum statutory sentence, 63 months greater than top of range); *United States v. Garza-Lopez*, 410 F.3d 268, 275 (5th Cir. 2005) (defendant's substantial rights affected by erroneous 16-level increase to offense level).

Here, the majority effectively maintains that any sentence erroneously outside the correct *advisory* Guidelines sentencing range affects defendant's substantial rights. That position will hamstring our court's discretionary role in future sentencing cases under plain-error review, thus guaranteeing that the fourth prong will be "illusory".

Moreover, the majority's interpretation of plain-error review in this instance puts an unnecessary and excessive burden upon district courts. As noted, in setting a low threshold for reversible plain error, the majority undermines a basic premise of plain-error review: "to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them". *Puckett*, 129 S. Ct. at 1428. That contemporaneous-objection rule is intended to prevent defendants from "sandbagging" the district court so that it can correct errors as they occur. *John*, 597 F.3d at 292 (Smith, J., dissenting) (quoting *Puckett*, 129 S. Ct. at 1429). Today's ruling, however, encourages "defendants to refrain from noticing sentencing error in the district court, secure in the knowledge that any forfeited error that arguably lengthens a sentence will be corrected on appeal, resulting in resentencing and a second bite at the apple". *Id.* It is axiomatic that forfeiting an objection has serious consequences, but the majority chooses to ignore them. Defendants should not appear on a sentencing or re-sentencing merry-go-round before the district

courts; given the high volume of sentencings those courts face, they "should be able to count on this court faithfully to apply the strict plain-error standard to forfeited error". *Id.* Again, meeting all four plain-error prongs is supposed to be difficult. *See Puckett*, 129 S. Ct. at 1429.

## III.

For these reasons, I respectfully dissent from Mudekunye's being resentenced and urge our court to consider *en banc* the proper (more simple and flexible) application of post-*Olano* and post-*Booker* plain-error review.