*623 JERRY E. SMITH, Circuit Judge,
dissenting:
I respectfully dissent, although the majority correctly decides Hernandez’s conflict-of-interest claim and properly holds that the district court committed an obvious error that likely affected Hernandez’s substantial rights when it added one point to the guideline calculation for a multicount indictment under U.S.S.G. § 3D1.4. At the fourth prong of plain-error analysis, this court should not exercise its discretion to reverse, because in no way does the error “seriously affect the fairness, integrity or public reputation of judicial proceedings.” United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal quotation marks and alterations omitted). The majority perpetuates this court’s unseemly habit of “being far more permissive on plain-error review than the Supreme Court and common sense allow.” United States v. Escalante-Reyes, 689 F.3d 415, at 431-36, 2012 WL 3024195, at *13-17 (5th Cir.2012) (en banc) (Smith, J., dissenting).
I.
Reversal on plain error is “exceptional,”[1] “used sparingly,”[2] “rare,”[3] and “difficult, as it should be,”[4] reserved for only the most “egregious,”[5] “serious,”[6] and “grievous”[7] errors. We should thus exercise our discretion to reverse only in “blockbuster”[8] cases in which the error is so flagrant that it “undermine[s] the fundamental fairness”[9] of our system and offends “core notions of justice”[10] such that “the trial judge and prosecutor [were] derelict in permitting it.”[11] “An error that warrants reversal despite the contemporaneous-objection rule is one that, if left uncorrected, would shock the conscience of the common man, serve as a powerful indictment against our system of justice, or seriously call into question the competence or integrity of the district judge.” Id. at 435 (Smith, J., dissenting).
This court has nonetheless adopted an approach that is “generous” and “permissive,”[12] reversing on plain-error review over 180 times since Olano was decided and in over 72% of the cases in which the fourth prong was reached. Id. at 433-34 (Smith, J., dissenting). This lax application of plain-error review not only runs afoul to the Supreme Court’s directives, but also severely undermines this court’s longstanding Contemporaneous Objection Rule, which
*624 ensures full development of the record, prevents strategic timing of objections meant to secure a second bite at the apple, gives incentives for the diligence and zealousness of trial counsel and the defendant, minimizes the sandbagging of trial courts, promotes judicial economy by reducing appeals and remand, and safeguards the district court’s role as the court of first instance in our federal system.
Id. (citations and internal quotation marks omitted). Unfortunately, the panel majority is complicit in this “unwarranted extension” of “the Rule’s careful balancing,” Young, 470 U.S. at 15, 105 S.Ct. 1038, which “encourages litigants to abuse the judicial process and bestirs the public to ridicule it.” Johnson v. United States, 520 U.S. 461, 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citation omitted).
II.
Although tacitly acknowledging the importance of the fourth prong, the majority regrettably adheres to the generous and permissive pattern of reversal on plain-error review. Though our caselaw makes the result none too surprising, “[tjhese holdings do not compel a similar conclusion here, however, because the fourth prong of plain-error review is meant to be applied on a ease-specific and fact-intensive basis.”[13]
It is uncontested that the district court clearly and obviously erred by adding one point to Hernandez’s sentence calculation for a multi-count enhancement under U.S.S.G. § 3D1.4. His miscalculated guideline range is 97-121 months, when it should have been 87-108 months. He received 120 months, one year above the top of his correctly calculated range.
The first two prongs of plain-error review are easily met. Although there is some question whether Hernandez’s substantial rights were affected, under our precedent a miscalculated range that likely affected his sentence by at least twelve months, with no evidence that the district court was willing to depart from the guideline range, likely satisfies the third prong.[14] The more difficult question concerns the fourth prong: whether the error seriously affects the fairness, integrity or public reputation of judicial proceedings. The majority rules that we should exercise our discretion and reverse for three principal reasons.
First, the majority finds that our precedent supports reversal because of the “substantial disparity between the imposed sentence and the applicable Guidelines range” (quoting Mudekunye, 646 F.3d at 291). In Mudekunye, the court addressed a sentence 19 months higher than the highest possible sentence in the correct range; here, the sentence is 12 months higher than the top of the applicable range. And in John, 597 F.3d at 285, the difference between the sentence and the top of the applicable range was 21 months.
*625 Of course, this case presents a closer call than Mudekunye and John, because the difference between Hernandez’s likely sentence under the correct range and his actual sentence — 12 months — is substantially less (19 months and 21 months, respectively). Although in 'some cases this court has found even smaller sentencing disparities, such as one or three months, to have met the fourth prong,[15] those decisions are unpublished and therefore not precedential.[16]
The only published case cited by éither side that presents a weaker case than the instant one, yet still met the fourth prong, is United States v. Price, 516 F.3d 285 (5th Cir.2008) — where this court reversed even though the sentence was within the correct guideline range — because, in the court’s judgment, the error “clearly affected the defendant’s sentence.” Id. at 290 (internal quotation marks omitted). This court, however, has since called into question a broad reading of Price.[17]
Weighing against the majority’s position, in United States v. Gaither, 434 Fed.Appx. 393, 394 (5th Cir.2011), this court found that a six-month difference between the sentence and the top of the correct range did not warrant reversal under the fourth prong, considering that the case involved “an offense involving domestic violence, drugs, and a firearm; a leadership role within a violent gang; and pending charges for possessing a deadly weapon while in prison.” We found similarly in Davis that the error failed to meet the fourth prong — even where the calculated range was 15-21 months, the correct range was 6-12 months, and the sentence imposed was 24 months — in part because the “sentence [was] well within the statutory maximum and was rendered after Davis was found violating numerous terms of his supervised release and apparently planning a return to his prior criminal activities.” Davis, 602 F.3d at 645, 650-52 (5th Cir .2010).
In sum, this court’s published decisions have not found that a disparity as small as the difference between a nine-year and a ten-year sentence is so substantial as seriously to affect the fairness or integrity of the judicial system. Indeed, in Davis we found that a twelve-month disparity that consisted of a larger proportion of the sentence than in the instant case did not warrant reversal, albeit in a case in which the district court had upwardly departed. Nevertheless, as stated before, these numbers alone should not determine whether we should exercise our discretion, because the inquiry is fact-intensive and case-sensi-' tive, so “we are not tethered to what other panels of this court have done in deciding whether to exercise their discretion in other cases, similar or not.” John, 597 F.3d at 291 (Smith, J., dissenting).
Second, the majority justifies reversal under the fourth prong because the error was particularly obvious. Though the obviousness of the error may weigh in favor of reversal on the fourth prong in some cases,[18] the more obvious the error, the *626 more concerning it is that neither the defendant nor his counsel bothered to take the time to review the PSR carefully and object to a mistake that affects the sentence.
Finally, the majority justifies reversal because, “even though the record of Hernandez’s offense contains some aggravating elements, those elements do not persuade us to refrain from exercising our discretion to remand for resentencing under the particular facts of this case.” “But the majority’s approach turns the fourth prong on its head.” Escalante-Reyes, 689 F.3d at 438 (Smith, J., dissenting). It makes remediation the norm that must be otherwise precluded by a showing of aggravating elements rather than upholding the sentence unless the defendant “can show a particularly sympathetic case in which the demands of justice so seriously undermine the integrity of our system that we are willing to depart from our well-established procedure to correct it.” Id. The majority thus repeats the common mistake of “presuming] plain error unless the prevailing party can prove otherwise,” id., when the Supreme Court has held, to the contrary, that the burden of proving the fourth prong is on the party seeking reversal, United States v. Vonn, 535 U.S. 55, 63, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002). Further, as demonstrated below, the majority is factually incorrect: The aggravating aspects of Hernandez’s offense reveal that his sentence does not offend “core notions of justice.” Gonzalez-Huerta, 403 F.3d at 739.
In this fact-intensive inquiry, we need to review the salient facts with care: Lorenzo Guerra, a confidential informant to the FBI, learned from Juan Rosales that Hernandez was selling large amounts of cocaine. Rosales stated that his aunt could bribe a Border Patrol agent to smuggle any amount of drugs Guerra wanted to purchase. Guerra visited Hernandez at Hernandez’s house, where one of Hernandez’s customers showed Guerra an ounce of cocaine he had recently purchased from Hernandez. Hernandez then asked a six-year-old girl to retrieve another ounce of cocaine from a back room to show Guerra, informing him that he could sell Guerra as much cocaine as he wanted to buy, but Guerra only agreed to buy one kilogram.
A couple of days later, Guerra again spoke to Rosales, who asked whether he was sure he wanted to buy only one kilo. Guerra responded that if the first kilo was good, he would consider buying five or six — a statement he repeated to Hernandez’s brother. Guerra met a second time with Hernandez, who showed him an additional one-ounce pack of cocaine, a .45 Ruger semi-automatic handgun, and two AK-47 assault rifles, explaining that he also could sell Guerra similar assault rifles and handguns. According to the PSR, which was adopted in full by the district court, “Hernandez claimed to have a contact that could steal guns directly from a manufacturer in Amarillo, Texas. Hernandez further stated he had just recently sent thirty stolen AR-15-style rifles to Ciudad Juarez, Mexico, to friends that were responsible for causing ‘all the mess’ in Ciudad Juarez.”
The next week, Guerra met with Hernandez’s brother, Daniel, to complete the transaction: one kilogram of cocaine for $17,000. When Guerra handed over the money, which was provided by the FBI, Daniel entered a waiting car and absconded without handing over the cocaine. Later, Guerra spoke to a neighbor connected to the drug-smuggling community, who informed him that Hernandez owed a Mexican drug cartel $150,000 and “was stealing money from whomever they could to pay their debt,” doing “anything to steal money, including murder.” Before he was ar *627 rested, Hernandez had numerous conversations with Guerra to smooth things over, claiming that Daniel should not have stolen the money. After arrest, however, Hernandez admitted to being the architect of the larcenous scheme.
This is not Hernandez’s first run-in with the law. In 1994, he was convicted of burglarizing a vehicle and in 2004 of stealing thousands of dollars worth of merchandise and engaging in organized crime. He has also had numerous other charges filed against him, including possession of cocaine and marihuana, unlawfully carrying a weapon, harassment, theft, and disorderly conduct. As a result, Hernandez had a criminal history category of II, which, combined with an offense level of 29, yielded a guideline range of 97-121 months. The sentence was 120 months. Because the one-point multi-count enhancement was erroneously applied, the offense level should have been 28, resulting in a range of 87-108 months. The statutory maximum for the cocaine offense of which Hernandez was convicted is 40 years. 21 U.S.C. § 841(b)(1)(B).
Considering these facts — (1) Hernandez’s desire to sell Guerra as much cocaine as he wanted,[19] (2) a conspiracy that may have involved bribing a federal agent, (3) Hernandez’s use of a six-year old girl in committing the offense, (4) his possession and attempted sale of assault rifles, (5) his admitted connection with the horrific violence in Ciudad Juarez, (6) a sentence well below the statutory maximum,[20] and (7) his pattern of criminal conduct — the mistaken addition of one to the offense level, which increased the advised sentence by just 10%, from nine years to ten — does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Judge Briones was not so incompetent or capricious as to have committed a dereliction of his duties by imposing this sentence, nor was
this unpreserved, forfeited error so particularly egregious, grievous, and serious, and this case so rare and exceptional, that [I am] willing to abrogate our most basic and longstanding rules of procedure to correct it because it generally undermines the fundamental fairness of the courts and offends core notions of justice.
Escalante-Reyes, 689 F.3d at 439-40 (citations and internal quotation marks omitted) (Smith, J., dissenting).
The majority should not have exercised its discretion to reverse on the fourth prong. The sentence should be affirmed, so I respectfully dissent.

. United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936).

. United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (citing United States v. Frady, 456 U.S. 152, 163 & n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)).

. United States v. Dominguez Benitez, 542 U.S. 74, 83 n. 9, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

. Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009).

. Young, 470 U.S. at 15, 105 S.Ct. 1038.

. United States v. Padilla, 415 F.3d 211, 223-24 (1st Cir.2005) (en banc).

. United States v. Robinson, 627 F.3d 941, 956 (4th Cir.2010).

. United States v. Taylor, 54 F.3d 967, 973 (1st Cir. 1995).

. Young, 470 U.S. at 16, 105 S.Ct. 1038.

. United States v. Gonzalez-Huerta, 403 F.3d 727, 739 (10th Cir.2005) (en banc).

. United States v. Vasquez, 267 F.3d 79, 87 (2d Cir.2001) (citations omitted); see also Frady, 456 U.S. at 163, 102 S.Ct. 1584.

. United States v. Ellis, 564 F.3d 370, 378 & n. 44 (5th Cir.2009).

. United States v. Poitra, 648 F.3d 884, 890 (8th Cir.2011) (quoting Puckett, 556 U.S. at 142, 129 S.Ct. 1423) (internal quotations and-alterations omitted); see also United States v. Mudekunye, 646 F.3d 281, 301 (5th Cir.2011) (per curiam) (Barksdale, J., dissenting); United States v. John, 597 F.3d 263, 291 (5th Cir.2010) (Smith, J., dissenting).

. See Puckett v. United States, 556 U.S. 129, 135, 142 n. 4, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (stating that “the error must have affected the appellant’s substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings .... When the rights acquired by the defendant relate to sentencing, the ‘outcome’ he must show to have been affected is his sentence.”) (citations and quotation marks omitted); see also Mudekunye, 646 F.3d at 289-91.

. See United States v. Carrizales-Jaramillo, 303 Fed.Appx. 215, 217 (5th Cir.2008); United States v. Severin, 221 Fed.Appx. 299, 303 (5th Cir.2006).

. Though Escalante-Reyes overturned a sentence below the correct guideline range, it is distinguishable, because it involved Tapia error, not incorrect guideline calculation. See Escalante-Reyes, 689 F.3d at 423-26.

. See Davis, 602 F.3d at 651 n. 12 (advising that "we should resist the temptation to over-read Price to categorically require remand wherever a reasonable probability of a lesser sentence is found”).

. See Escalante-Reyes, 689 F.3d at 440 n. 25 (Smith, J., dissenting).

. Had, for example, Hernandez continued in the conspiracy and tried to sell Guerra five or six kilograms of cocaine, his base offense level would have been six points higher. U.S.S.G. § 2D 1.1 (c)(4). Indeed, if Hernandez had attempted to sell that much cocaine, his statutory minimum sentence would have been ten years. See 21 U.S.C. § 841(b)(1)(A).

. See Davis, 602 F.3d at 651 ("On this record, we decline to conclude that the district court’s imposition of a sentence of 24 months of imprisonment and two years of supervised release — particularly where a statutory maximum of 36 months of imprisonment and two years of supervised release was an available punishment — seriously affects the fairness, integrity or, public reputation of judicial proceedings.”) (citation, internal quotation marks, and alterations omitted).