IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 2, 2010

Lyle W. Cayce
Clerk

No. 09-10731

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

TONY EUGENE DAVIS

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before KING, JOLLY, and STEWART, Circuit Judges.

KING, Circuit Judge:

Defendant–appellant Tony Eugene Davis appeals the sentence of 24 months of imprisonment and two years of supervised release imposed following the revocation of his supervised release. Davis contends that remand for resentencing is warranted because there is a reasonable probability that, but for the district court's consideration of an incorrect advisory sentencing range, he would have received a lesser sentence. On plain error review, we affirm.

I.  BACKGROUND

On January 21, 2009, the vehicle in which Davis was traveling as a passenger was stopped for a traffic violation in Walker County, Texas. Davis,

a convicted armed bank robber,[1] was five months into a five-year term of supervised release. Noticing that the vehicle's three occupants appeared nervous and were providing inconsistent stories, the officer who initiated the stop obtained Davis's permission to search the vehicle, which was registered in Davis's name. The search revealed a loaded model Cf-200, Hi-Point .380 caliber pistol in a briefcase on the rear passenger seat. Davis admitted that the briefcase belonged to him. Also in the vehicle were several notes on colored paper that read:

> This is a robbery. I want all of your big bills. No ink spots. No transmitters. Please hurry. I will shoot you. Have a nice day. (

These notes were found throughout the car, including one in a bank bag, another in the glove compartment, and yet another in Davis's wallet. Davis was arrested for being a felon in possession of a firearm, a third-degree felony under Texas law, see TEX. PENAL CODE ANN. § 46.04 (Vernon 2003), and was later indicted in Texas state court.

The district court held a hearing on July 15, 2009, to determine whether Davis's supervised release should be revoked. Davis's probation officer testified that Davis did not have permission to be in Texas on the day of the traffic stop—Davis had arranged to live in Arkansas upon release from prison and was required to inform his probation officer before leaving the state, which he had not done. The probation officer also testified that the terms of Davis's supervision prohibited him from committing any new federal, state, or local offenses and from possessing a firearm. The district court found, after hearing this testimony, that Davis had violated the conditions of his supervised release.

A Supervised Release Violation Report prepared by the probation office indicated that Davis had a criminal history category of II and had committed a

---

[1] Davis's conviction for armed bank robbery was under 18 U.S.C. § 2113(a) and (d), a Class B felony. See 18 U.S.C. § 3581(b)(2).

Grade A violation of the conditions of supervised release. Under the advisory policy statements (the "policy statements") in Chapter 7 of the United States Sentencing Guidelines (the "Guidelines"), these factors yielded an advisory range of imprisonment of 15 to 21 months. U.S. SENTENCING GUIDELINES MANUAL § 7B1.4(a) (2009) ("U.S.S.G."). The statutory maximum punishment for Davis's violation was three years of imprisonment plus two years of supervised release. See 18 U.S.C. § 3583(e)(3), (h).[2] At the revocation hearing, Davis's counsel represented that the 15 to 21 month advisory range was correct and requested that Davis receive a sentence within that range. After hearing Davis's allocution, the district court imposed 24 months of imprisonment to be followed by two years of supervised release. The district court commented to Davis:

> You weren't on supervised release for five months before you got rearrested. . . . You didn't give [reintegration] a chance. Within five months you were already out of the district, and then you are carrying a gun and have this note that looks like you are doing some more armed robberies. And I don't need to hear any argument from you. I have heard plenty from you.

The parties now agree that the 15 to 21 month advisory range was incorrect. Davis's violation was in fact a Grade B violation under the policy statements because the firearm found in Davis's briefcase, a pistol, is not the type of firearm that would support a more serious Grade A violation.[3] The

---

[2] Because Davis's conviction was for a Class B felony, the district court could impose a prison term of up to three years upon revocation of supervised release. 18 U.S.C. § 3583(e)(3). The statute also allows the district court to impose additional supervised release following revocation in the amount of "the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." Id. § 3583(h). Because Davis's original term of supervised release was five years, his maximum term of supervised release, if the maximum term of imprisonment were imposed, would be two years.

[3] A Grade A violation includes "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a)." U.S.S.G. § 7B1.1(a)(1)(A)(iii). Section 5845(a) includes shotguns, rifles, and machine guns, but specifically excludes "pistol[s] . . . having a rifled bore." 26 U.S.C. § 5845(a), (e).

correct advisory range was therefore only 6 to 12 months. U.S.S.G. § 7B1.4(a). Davis contends that the district court's consideration of an incorrect advisory range provides a basis to vacate his sentence and order resentencing. Davis concedes that because he did not raise this objection in the district court, plain error review applies.

## II. THE LEGAL STANDARD

A district court may impose any sentence upon revocation of supervised release that falls within the statutory maximum term allowed for the revocation sentence, but must consider the factors enumerated in 18 U.S.C. § 3553(a) and the policy statements before doing so. 18 U.S.C. § 3583(e); United States v. McKinney, 520 F.3d 425, 427 (5th Cir. 2008).[4] Had Davis properly preserved his objection to the 15 to 21 month advisory range, we would review to determine whether the sentence imposed was unreasonable or "plainly unreasonable." See United States v. Jones, 484 F.3d 783, 792 (5th Cir. 2007).[5] Because Davis did not object to the 15 to 21 month advisory range in the district court, however, we

---

[4] We explained the significance of the policy statements in McKinney:

There are no applicable guidelines for sentencing after revocation of supervised release; instead, the sentencing guidelines include policy statements concerning the revocation of supervised release. Section 7B1.4(a) [of the policy statements] provides advisory imprisonment ranges for defendants whose terms of supervised release have been revoked. The sentencing ranges are based on both the defendant's criminal history and the severity of the defendant's supervised release violation.

520 F.3d at 428 (internal citations omitted).

[5] Before United States v. Booker, 543 U.S. 220 (2005), this court would uphold sentences imposed upon revocation of supervised release unless "in violation of law or plainly unreasonable." United States v. Stiefel, 207 F.3d 256, 258 (5th Cir. 2000). This court has not yet decided, in the wake of Booker, whether this standard remains appropriate or whether Booker's standard of review for initial sentences, "unreasonableness," applies with equal force to review of sentences imposed upon revocation of supervised release. See United States v. Jones, 484 F.3d at 792; United States v. Hinson, 429 F.3d 114, 120 (5th Cir. 2005). Because this case involves plain error, which imposes a more deferential standard of review, we need not resolve this issue.

review under a more deferential standard for plain error. United States v. Davis, 487 F.3d 282, 284 (5th Cir. 2007).

To establish plain error, an appellant must show a forfeited error that is clear or obvious and that affected his substantial rights. Puckett v. United States, --- U.S. ---, 129 S. Ct. 1423, 1429 (2009). Ordinarily, an error affects substantial rights only if it "'affected the outcome of the district court proceedings.'" Id. (quoting United States v. Olano, 507 U.S. 725, 734 (1993)); see also Davis, 487 F.3d at 284. If the appellant makes this showing, "the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Puckett, 129 S. Ct. at 1429 (quoting Olano, 507 U.S. at 736).

In the sentencing context, we have held that an appellant can show an impact on substantial rights—and therefore a basis for reversal on plain error review—where the appellant can show a reasonable probability that, but for the district court's error, the appellant would have received a lower sentence. United States v. Garcia–Quintanilla, 574 F.3d 295, 303–04 (5th Cir. 2009). We have specifically applied this rule where the district court considered an incorrect advisory range under the Guidelines for an initial sentence, United States v. John, --- F.3d ---, 2010 WL 432405, at *13 (5th Cir. Feb. 9, 2010), and in a number of unpublished cases have done the same where, as here, the district court considered an incorrect advisory range under the policy statements for a sentence imposed upon revocation of supervised release. See United States v. Jimenez, No. 08-11175, 2010 WL 445620, at *1 (5th Cir. Feb. 8, 2010) (per curiam); United States v. Arkadie, 344 F. App'x 966, 967 (5th Cir. 2009) (per curiam); United States v. Soliz, 344 F. App'x 900, 902 (5th Cir. 2009) (per curiam). This is consistent with the rule in other circuits. See, e.g., United States v. Miller, 557 F.3d 910, 916 (8th Cir. 2009) (concluding, in the revocation

context, that "an error [i]s prejudicial only if there is a reasonable probability that the defendant would have received a lighter sentence but for the error").[6] As the appellant, Davis bears the burden of establishing reasonable probability. Garcia–Quintanilla, 574 F.3d at 303.

## III. ANALYSIS

The parties do not dispute that the error in the advisory range that the district court considered was clear and obvious. The issues are whether that error affected Davis's substantial rights under the "reasonable probability" test, and if so, whether the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," Puckett, 129 S. Ct. at 1429 (internal quotation marks omitted), such that we should exercise our discretion to remand for resentencing. Davis contends that there is a reasonable probability that, but for the district court's consideration of the incorrect range, his sentence would have been lower. He argues that a reasonable probability can be inferred because the district court considered the higher, incorrect range in weighing the § 3553(a) factors and reaching its sentence determination; because there is no overlap between the correct 6 to 12 month advisory range and incorrect 15 to 21 month range; and because there is a significant gap between the correct range

---

[6] Pre-Booker, our standard for evaluating an error's effect on substantial rights was whether, "if the case were remanded, the trial judge could reinstate the same sentence." United States v. Ravitch, 128 F.3d 865, 869 (5th Cir. 1997). Some of our cases have questioned whether Ravitch might continue to apply post-Booker. See, e.g., United States v. Price, 516 F.3d 285, 289 n.28 (5th Cir. 2008). Although we do not appear to have definitively determined since Price which standard applies, more recent cases have embraced the "reasonable probability" standard and have not referenced Ravitch. See, e.g., John, 2010 WL 432405, at *13 ; United States v. Jones, 596 F.3d 273, 277 (5th Cir. 2010). We need not decide the present status of Ravitch here because remand is unavailable under either test. The parties do not dispute that the district court could reimpose the 24 month sentence on remand and we conclude that even if a "reasonable probability" were shown that Davis's sentence would have been lower, the error in this case is not the type that we should exercise our discretion to correct.

and the 24 month sentence actually imposed.[7] He also contends that the error in this case seriously affects the fairness or integrity of the proceedings, and therefore is of the type that we should exercise our discretion to remand. The Government, pointing out that the district court imposed a sentence above the high end even of the incorrect range and commented on the severity of Davis's offense,[8] counters that Davis has not met his burden of showing a reasonable probability that his sentence would have been lower absent the district court's consideration of the incorrect range, and that even if Davis could meet this burden, this is not the type of circumstance in which remand would be appropriate.

A.    Whether Davis Has Shown a "Reasonable Probability"

We are not convinced that Davis has met his burden of establishing a reasonable probability that the district court's consideration of an incorrect advisory range affected his sentence, as is required to satisfy the "substantial effect" prong of the plain error test. The record amply demonstrates that in determining Davis's post-revocation sentence, the district court placed great weight on the seriousness of the circumstances surrounding Davis's violations of the conditions of his supervised release and concluded that the violations merited a significant punishment. The district court noted that Davis was only five months into a five-year sentence of supervised release; was outside the state

---

[7] Davis raised the arguments as to overlap and gap for the first time in his reply brief. We note that although we need not consider these arguments because they are raised for the first time in his reply brief, we have discretion to do so. See United States v. Aguirre–Villa, 460 F.3d 681, 683 n.2 (5th Cir. 2006) ("[T]his Court will not ordinarily consider arguments raised for the first time in a reply brief."); Cousin v. Trans Union Corp., 246 F.3d 359, 373 n.22 (5th Cir. 2001) (noting that although issues not raised in initial brief are normally waived, we have discretion to decide the issue). We have decided to do so here. We note that the Government had the opportunity to address these issues on the merits at oral argument and has not argued that we should disregard these issues for being raised for the first time in a reply brief.

[8] Davis does not challenge the adequacy of the district court's reasons for varying upward from the incorrect advisory range.

in which he was required to remain; was in possession of a firearm; and was carrying a bank bag and printed notes that strongly suggested that he intended to resume the same activities for which he initially had been convicted and imprisoned. Commenting on the seriousness of the violations, the district court imposed a 24 month sentence, higher even than the top end of the incorrect advisory range. The court, in short, had ample independent bases for imposing the sentence that it did, and Davis has cited no statements in the record to indicate that the court—which was required only to consider the advisory range indicated by the policy statements and was permitted to impose any sentence within the statutory maximum when determining the sentence—relied on the incorrect advisory range in determining his sentence.[9]

Davis contends that we may infer such reliance because the correct and incorrect advisory ranges did not overlap and because there is a significant gap between the correct 6 to 12 month range and the 24 month sentence actually imposed. Davis is correct that we have been willing, in previous cases, to infer reliance where the sentence imposed fell within an incorrect advisory range that

---

[9] We recognize, however, that although the district court was not obliged to follow the advisory range or accord it any particular weight—and there is no specific evidence in the record that it did so—advisory ranges often provide a "frame of reference" for a district court's sentencing decisions, United States v. Smith, 440 F.3d 704, 707 (5th Cir. 2006), and such ranges are one factor that a district court must consider in its § 3553(a) analysis, 18 U.S.C. § 3553(a). Although the district court's actions in the present case make clear that it intended to impose a sentence above the applicable advisory range, it is not equally clear that the court would have imposed the same sentence had it considered the lower, correct advisory range. Most notably, the district court never stated that it would have imposed the same sentence regardless of the advisory range. Cf. United States v. Lemus-Gonzalez, 563 F.3d 88, 98 (5th Cir. 2009) (finding no reasonable probability where the district court considered both the correct and incorrect ranges and stated that it would have imposed the same sentence in any event); United States v. Bonilla, 524 F.3d 647, 656 (5th Cir. 2008) (same); United States v. Tzep–Mejia, 461 F.3d 522, 526–27 (5th Cir. 2006) (same). We are hesitant, however, to conclude that Davis can meet his burden simply by pointing to a clear error in the record and asking us to infer, without more, that prejudice resulted. Cf. United States v. Jimenez, 2010 WL 445620, at *2 (5th Cir. Feb. 9, 2010) ("By itself, the district court's erroneous selection of the incorrect guideline range [wa]s not enough to demonstrate that the 'substantial rights' prong of the plain error test [wa]s satisfied."); United States v. Gonzalez, 253 F. App'x 387, 388 (5th Cir. 2007) (same).

did not overlap with the correct advisory range, see United States v. John, 2010 WL 432405, at *13, or when even where there was some overlap, if the gap between the correct advisory range and the sentence actually imposed was significant, see United States v. Price, 516 F.3d 285, 289 (5th Cir. 2008). But none of the cases that Davis cites—and none of the "overlap" or "gap" cases that this court has located—involved facts similar to those in the present case, in which the district court imposed a sentence above even the top end of the incorrect advisory range while commenting on the seriousness of the offense. To the contrary, in each of the cases that Davis cites, the court imposed a sentence within the incorrect range and made no comments to suggest that an above-range sentence would be appropriate.[10] In these cases, unlike Davis's, the record created a strong inference that the district court would in fact have imposed a lower sentence had it considered the correct advisory range.

---

[10] See United States v. John, 2010 WL 432405, at *13 (finding effect on substantial rights where the 108 month sentence was imposed after the district court considered an incorrect advisory range of 97 to 121 months rather than 70 to 87 months; specifically noting that "it is not apparent from the record that John would have received an above-Guidelines sentence of 108 months if the district court had applied [the correct range]"); United States v. Munoz-Ortenza, 563 F.3d 112, 116 (5th Cir. 2009) (finding effect on substantial rights where the 41 month sentence was imposed after the district court considered an incorrect advisory range of 41 to 51 months rather than 6 to 12 months); United States v. Gonzalez–Terrazas, 529 F.3d 293, 298 (5th Cir. 2008) (finding effect on substantial rights where the 57 month sentence was imposed after the district court considered an incorrect advisory range of 57 to 71 months rather than 24 to 30 months); United States v. Sanchez, 527 F.3d 463, 466 (5th Cir. 2008) (finding effect on substantial rights where the district court rendered a 60 month sentence a rather than a 21 to 27 month sentence after failing to consider a proposed Guideline); United States v. Price, 516 F.3d at 289 (finding effect on substantial rights where 110 month sentence imposed after the district court considered an incorrect advisory range of 110 to 120 months rather than 92 to 115 months; concluding that although the sentence rendered was within the correct range, "a 92-month sentence is substantially lower than a 110-month sentence"); United States v. Dentler, 492 F.3d 306, 314 (5th Cir. 2007) (finding effect on substantial rights where the 240 month sentence was imposed after the district court considered an incorrect advisory range of 210 to 262 months rather than 140 to 175 months); United States v. Villegas, 404 F.3d 355, 364 (5th Cir. 2005) (per curiam) (finding effect on substantial rights where the 21 month sentence was imposed after the court, applying then-mandatory Guidelines, considered an incorrect range of 21 to 27 months rather than 10 to 16 months).

The facts of Davis's case are very similar to those that we addressed in United States v. Jimenez, No. 08-11175, 2010 WL 445620, at *2 (5th Cir. Feb. 8, 2010) (per curiam), which, though unpublished, provides persuasive authority. In Jimenez, the district court incorrectly determined, in a revocation hearing, that the advisory range of imprisonment under the policy statements was 12 to 18 months. Id. at *1. The correct range was 6 to 12 months. Id. The district court ultimately imposed a sentence of 36 months, the statutory maximum for the violation at issue. Id. at **1–2. We concluded that "[b]y itself, the district court's erroneous selection of the incorrect guideline range [wa]s not enough to demonstrate that the 'substantial rights' prong of the plain error test [wa]s satisfied," given that the district court had "supported its upward departure from the guidelines by noting Jimenez's absconding from justice for 18 months and the drug treatment opportunity that a 36 month term would afford." Id. at *2. We held that on these facts, "Jimenez ha[d] failed to demonstrate that there [wa]s a 'reasonable probability' he would have received a different term of imprisonment but for the guideline calculation error." Id. Here, as in Jimenez, the district court imposed a sentence above even the incorrect advisory range and supported this variance with reasons reflecting the gravity of the offense. Considering the record and our case law, we are skeptical that Davis has met his burden of showing a reasonable probability that, but for the district court's consideration of the incorrect advisory range, his sentence would have been lower.

B.   Whether We Should Exercise Discretion to Remand

We need not decide whether Davis has met his burden of showing reasonable probability, however, because assuming without deciding that he has, the error in this case is not the sort that we should, on plain error review,

exercise our discretion to remedy.[11]  Davis violated his supervised release only five months into a five-year sentence.  He was found outside the state in which he was required to remain and was in possession of a firearm.  He was carrying a bank bag and printed notes that strongly suggested that he intended to resume the same activities for which he initially had been convicted and imprisoned.  On this record, we decline to conclude that the district court's imposition of a sentence of 24 months of imprisonment and two years of supervised release—particularly where a statutory maximum of 36 months of imprisonment and two years of supervised release was an available punishment—"seriously affects the fairness, integrity or public reputation of judicial proceedings." Puckett, 129 S. Ct. at 1429 (internal quotation marks omitted).

Davis resists this conclusion, arguing that our precedent requires remand whenever an appellant can show a reasonable probability that an unpreserved error affected the sentence.  But, as we observed in United States v. Ellis, 564 F.3d 370, 378 (5th Cir. 2009), "the case law on this point is [not as] settled or as categorical as language in some cases might make it seem."[12]  In United States

---

[11] Because we do not decide whether Davis has established a reasonable probability that the district court's consideration of an incorrect advisory range affected his substantial rights, we do not reach the Government's argument that we should accord less scrutiny to sentences imposed after consideration of incorrect policy statement ranges than incorrect Guidelines ranges.  The Government contends that the policy statements, even post-Booker, do not (or should not) carry as much weight as the Guidelines in sentencing determinations.  Our circuit has not addressed this question, nor has any other of which we are aware.

[12] Davis points to our statement in United Stats v. Price, 516 F.3d 285, 289 (5th Cir. 2008), that remand is required whenever the error "clearly affected [the] defendant's sentence." (internal quotation marks omitted).  But this language was drawn from United States v. Villegas, 404 F.3d 355, 365 (5th Cir. 2005) (per curiam), in which, under the then-mandatory Guidelines, the district court imposed a 21 month sentence, which was within an incorrect range of 21 to 27 months and significantly higher than the 10 to 16 month range.  In Villegas, the error in fact had a clear effect on the sentence—the Guidelines were mandatory, and the district court made no statement on the record of any intention to depart from the Guidelines. Here, by contrast, it is not clear that the error had any effect on the sentence; there is not necessarily even a reasonable probability that it did so.  We also note that Price and Ellis share a writing judge—suggesting that we should resist the temptation to overread Price to

v. John, 2010 WL 432405, at *15, we analyzed the relevant case law and concluded that in this circuit, "whether a sentencing error seriously affects the fairness, integrity, or public reputation of judicial proceedings is dependent upon the degree of the error and the particular facts of the case." The factual circumstances under which we have granted remand have typically involved disparities between the correct range and the sentence actually imposed that were more severe than that presented here. More importantly, these cases have involved facts that strongly suggest that the district court would have imposed a lesser sentence had it considered the correct sentence. See, e.g., id. (remanding because the 108 month sentence imposed was significantly above the 70 to 87 month advisory range and district court had shown no intention of imposing an above-Guidelines sentence); Price, 516 F.3d at 289 (remanding because the gap between the 110 month sentence imposed and the 92 month low-end of the correct range was significant, and because the district court's actions suggested that it would in fact have sentenced at the low end of the correct range); United States v. Gonzales, 484 F.3d 712, 717 (5th Cir. 2007) (per curiam) (remanding because the 76 month sentence imposed, which was within the incorrect 70 to 87 month advisory range, was substantially higher than the correct 30 to 37 month range).

These cases also are not the only applicable precedent. We have held, in at least one case that predates these cases, that we may decline to remand when we are persuaded that the error, though plain, did not yield a result that seriously affects the fairness or integrity of the proceedings. In United States v. Jones, 489 F.3d 679, 682 (5th Cir. 2007), we concluded that although the district court had improperly based its 23 month upward departure on the appellant's lengthy arrest record, remand was not required, even if there was a reasonable

---

categorically require remand wherever a reasonable probability of a lesser sentence is found.

probability that the appellant's sentence would have been less had the district court not considered the arrest record, because "the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." We noted in particular that the sentence was supported by the facts that the appellant, who pled guilty in these proceedings to possession of firearms by a felon, had been found with a gun little more than a week after a state court felony conviction and had a long, troubling history with guns. Id.

In short, although some of our sentencing precedent "has been generous with remand," we have also recognized and acted on the proposition that "[n]ot every error that increases a sentence need be corrected by a call upon plain error doctrine." Ellis, 564 F.3d at 378. The plain error test requires both a showing of effect on the appellant's substantial rights and an effect on the fairness or integrity of the proceedings before this court may exercise its discretion to remedy the error. Puckett, 129 S. Ct. at 1429. If, as Davis asserts, every error affecting substantial rights affects the fairness or integrity of the proceedings, this would "effectively dispense[ ]" with the final prong of the plain error test, and with it, "our discretion." John, 2010 WL 432405, at *18 (Smith, J., dissenting); see also Ellis, 564 F.3d at 378 ("[E]ven if an increase in a sentence be seen as inevitably 'substantial' in one sense it does not inevitably affect the fairness, integrity, or public reputation of judicial process and proceedings."). To conclude that the 24 month sentence imposed in this case "casts [serious] doubt upon the fairness, integrity, or public reputation of the proceedings"—a sentence that is well within the statutory maximum and was rendered after Davis was found violating numerous terms of his supervised release and apparently planning a return to his prior criminal activities—would "drain[ ] all content from the doctrine of plain error." Ellis, 564 F.3d at 379. Accordingly, we decline to exercise our discretion to remand for resentencing.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the sentence.

AFFIRMED.