**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 9, 2012

No. 11-11067

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

BERNARDINO MENDOZA-PEREZ

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
4:11-CR-86-1

Before WIENER, CLEMENT, and PRADO, Circuit Judges

PER CURIAM:[*]

Defendant-Appellant Bernardino Mendoza-Perez[1] appeals a 40-month sentence imposed after he pleaded guilty to one count of illegal reentry in violation of 8 U.S.C. § 1326. Mendoza contends that the district court plainly erred when it categorized a 1991 Texas conviction for offering to sell marijuana as an "aggravated felony" under United States Sentencing Guidelines (U.S.S.G.)

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The defendant goes by the surname "Mendoza," and we will henceforth refer to him by that name.

No. 11-11067

Section 2L1.2(b)(1)(C). Although the parties agree that the enhancement was plain error, we conclude that it did not affect Mendoza's substantial rights. We therefore AFFIRM the judgment, as modified herein.

## I. FACTS AND PROCEEDING

In July 2011, at the age of 64, Mendoza pleaded guilty to a one-count indictment charging him with illegal reentry after deportation in violation of 8 U.S.C. § 1326. Mendoza allegedly had reentered to care for his dying wife.

In the Presentence Investigation Report (PSR), the probation officer noted four prior convictions: a 1981 conviction for transporting illegal aliens; a 1983 conviction for aiding and abetting illegal aliens; a 1991 conviction for offering to sell 50-200 pounds of marijuana; and a 2004 conviction for simple possession of cocaine. Because of the age of the first three convictions, only the 2004 cocaine conviction affected Mendoza's criminal history score, resulting in an increase of three points. Another two points were assessed because, at the time he committed the instant offense, he was still serving a parole term for the cocaine conviction. With five criminal history points, Mendoza fell within Criminal History Category III.

The probation officer also calculated a base offense level of eight, and applied a 16-level enhancement for a prior offense involving alien smuggling. He withdrew the enhancement, however, after both parties objected that the supporting documentation did not reflect a felony conviction, as required by U.S.S.G. § 2L1.2(b)(1)(A)(vii). The government nevertheless insisted that the 16-level enhancement should apply on the basis of Mendoza's 1991 marijuana conviction, which, the government contended, was a "drug trafficking offense for which the sentence imposed exceeded 13 months."[2] Mendoza countered that the

---

[2] *See* U.S.S.G. § 2L1.2(b)(1)(A)(i).

Guidelines provision did not apply, however, as the sentence imposed in connection with the Texas conviction was suspended in its entirety, and thus did not exceed the required 13 months. The probation officer agreed that the enhancement did not apply, and in an addendum to the PSR, found Mendoza properly accountable under U.S.S.G. § 2L1.2(b)(1)(D) for a four-level increase based on the prior felony conviction. In a second addendum, however, the probation officer determined that the marijuana offense was in fact an *aggravated* felony – rendering the instant offense subject instead to an eight-level increase under U.S.S.G. § 2L1.2(b)(1)(C). After applying a three-level reduction for Mendoza's acceptance of responsibility, the PSR calculated a total offense level of 13.

As determined in the PSR, that offense level, coupled with the Category III criminal history score, produced a Guidelines range of 18-24 months. The PSR recommended that the court consider an above-Guidelines sentence, however, as the criminal history score did not adequately represent the seriousness of Mendoza's past crimes or his likelihood of recidivism. Mendoza moved for a below-Guidelines sentence, contending that his age-related illnesses and his motivation for reentering the United States rendered his case atypical. The government objected, noting that Mendoza had been deported or removed multiple times without having been prosecuted, and that his criminality had in fact spanned several decades. A few days before sentencing, the court issued an order presenting its tentative conclusion that, for the reasons noted in the PSR, Mendoza should receive a sentence "significantly above the top of the advisory [G]uideline range." The court instructed the parties to approach sentencing with its preliminary assessment in mind.

At sentencing, the district court considered four-, eight-, and twelve-level increases to Mendoza's offense level to account for his prior marijuana conviction. Ultimately, it settled on the eight-level increase for commission of

No. 11-11067

an aggravated felony under U.S.S.G. § 2L1.2(b)(1)(C), as recommended in the second addendum to the PSR. Neither party voiced an objection to this selection.

After acknowledging the PSR's Guidelines range of 18-24 months, the sentencing court heard Mendoza's daughter speak of her father's commitment to caring for her sick mother. Although the court stood by its earlier tentative conclusion that an above-Guidelines sentence was appropriate, it conceded that the variance justified was "perhaps not as great as I initially – initially thought." The court acknowledged the mitigating role played by Mendoza's motivation to care for his wife, but stressed that such motivation did not justify the offense. The court expressed concern with Mendoza's flouting of United States immigration laws and his likelihood of recidivism. Ultimately, it imposed a term of 40 months imprisonment, which is 14 months above the top of the calculated Guidelines range.

Mendoza now challenges his sentence on the basis of the court's assessment of an eight-level increase to his offense level. He contends that, because the prior drug offense was not, in fact, an aggravated felony, U.S.S.G. § 2L1.2(b)(1)(C) does not apply; that only the four-level increase under U.S.S.G. § 2L1.2(b)(1)(D) for a prior felony conviction is appropriate. Had the court so found, Mendoza's advisory range would have been 10-16 months.[3]

## II. ANALYSIS

### A. Legal Standard

Because Mendoza did not object to the eight-level enhancement and the resulting 18-24-month advisory range in the district court, we review for plain

---

[3] The 10-16-month range reflects Mendoza's Category III criminal history score, and a total offense level of 10. Mendoza would not have been entitled, in such case, to the additional one-level reduction for his acceptance of responsibility under U.S.S.G. § 3E1.1(b).

error.[4]  To establish plain error, an appellant must show a forfeited error that is clear or obvious and that affected his substantial rights.[5]  Mendoza can show that his substantial rights are affected by demonstrating a reasonable probability that, but for the district court's error, he would have received a lesser sentence.[6]  Mendoza, not the government, has the burden of persuasion on this issue.[7]  If he makes the required showing, we have the discretion to remedy the error, but only if it "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings."[8]

## B.  Merits

Mendoza insists that his Texas conviction for offering to sell marijuana was not an "aggravated felony" under U.S.S.G. § 2L1.2(b)(1)(C), so that he was not subject to the eight-level increase under that section.  The government concedes as much.  Indeed, application notes accompanying that provision of the Guidelines indicate that "aggravated felony" has the meaning given in 8 U.S.C. § 1101(a)(43) – which includes, among its defined offenses, "illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section 924(c) of Title 18)[.]"[9]  Section 924(c) defines "drug trafficking crime" as essentially any felony punishable under the federal drug laws.[10]  In considering

---

[4] *United States v. Davis*, 602 F.3d 643, 646-47 (5th Cir. 2010).

[5] *Id.* at 647 (citing *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

[6] *United States v. Garcia-Quintanilla*, 574 F.3d 295, 303-04 (5th Cir. 2009).

[7] *United States v. Olano*, 507 U.S. 725, 734 (1993).

[8] *Puckett*, 556 U.S. at 135 (quoting *Olano*, 507 U.S. at 736).

[9] U.S.S.G. § 2L1.2, cmt. 3(A).

[10] *See* 18 U.S.C. § 924(c)(2) ("For purposes of this subsection, the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act, the Controlled

No. 11-11067

the same Texas statute under which Mendoza was indicted and convicted, this court has previously held that an offer to sell a controlled substance is not an aggravated felony for purposes of U.S.S.G. § 2L1.2(b)(1)(C).[11]

The government concedes that the error in this case was plain. "Plain" errors are those that are "clear or obvious,"[12] as when the state of the law is certain under the court's precedents.[13] Given this court's determination of this very issue in *United States v. Ibarra-Luna*,[14] the current law was indeed clear when the district court erroneously applied the eight-level enhancement.

This is where the parties' agreement ends and the heart of the dispute lies. The government contends that, notwithstanding the court's clear error in assessing the eight-level increase, Mendoza has failed to demonstrate a reasonable probability that the sentencing court would have imposed a lesser sentence had it calculated the Guidelines range correctly. Not surprisingly, Mendoza disagrees. He contends that (1) the two-month "gap" between the incorrect Guidelines range under which he was sentenced and the correct range under which he *should* have been sentenced counsels in favor of remand; (2) the district court's sentencing commentary evidences a "fluid view of the case" and a willingness to reassess based on new considerations; and (3) other background factors might have inspired leniency had the court not erred in applying the enhancements. We consider these contentions in turn.

---

Substances Import and Export Act, or chapter 705 of title 46.") (internal statutory citations omitted).

[11] *See United States v. Ibarra-Luna*, 628 F.3d 712, 715-16 (5th Cir. 2010).

[12] *Puckett*, 556 U.S. at 135.

[13] *United States v. Price*, 516 F.3d 285, 288 (5th Cir. 2008).

[14] 628 F.3d 712.

No. 11-11067

Mendoza first notes the absence of an overlap between the incorrect Guidelines range calculated (18-24 months) and the correct range that the court should have calculated (10-16 months). He contends that the two-month hiatus between the top of the correct range and the bottom of the applied range reflects the Sentencing Commission's conclusions about the disparateness of the two offenses. This court has indeed "minded the gap" in past cases to infer that a sentencing court relied on the Guidelines when the sentence imposed has fallen *within* an incorrect Guidelines range[15] that did not overlap with the correct range.[16] But here, Mendoza's sentence fell well above even the *incorrect*, higher range that the court considered. As the ultimate question is whether the court would have imposed a different sentence if it had been calculated in light of the proper advisory range, the court's variance and imposition of an above-Guidelines sentence demonstrates its *disagreement* with the Sentencing Commission's assessment of the appropriate sentence. Absent some indication that the Guidelines actually affected the court's sentence, Mendoza's argument based on the non-overlap of advisory ranges is unavailing.

Mendoza rightfully notes, however, that a decision to sentence above even the incorrect advisory range is not *conclusive* evidence that the court would have imposed the same sentence under a different Guidelines range. Guidelines ranges "often provide a 'frame of reference' for a district court's sentencing

---

[15] *See Davis*, 602 F.3d at 649, 650 n.10 (collecting cases and noting that "none of the 'overlap' or 'gap' cases that this court has located[] involved facts similar to those in the present case, in which the district court imposed a sentence above even the top end of the incorrect advisory range while commenting on the seriousness of the offense").

[16] Even in cases of some overlap, a large enough distance between the correct advisory range and the sentence actually imposed has led this court to find an effect on a defendant's substantial rights. *See, e.g., Price*, 516 F.3d at 289 (substantial rights affected when court imposed 110-month sentence after considering incorrect advisory range of 110-120 months rather than 92-115 months).

decisions, and such ranges are one factor that a district court must consider in its § 3553(a) analysis."[17]  In one case involving a preserved claim of error (and thus, a different allocation of the burden to show harm), this court expanded on this logic:

> Even when the district court ultimately decides to impose a sentence outside the Guidelines range, an error in its Guidelines calculation may still taint the non-Guidelines sentence.  For instance, the district court might settle upon a particular non-Guidelines sentence by doubling the maximum Guidelines range, or by starting with the Guidelines range and adding or subtracting a fixed number of years.  In such cases it may be clear that the district court's reasons for rejecting a sentence in the Guidelines range are unaffected by the error, but the error nevertheless is not harmless because the district court would not have imposed the very same sentence.[18]

For this reason, we must look beyond the sentence actually imposed and consider the district court's reasons for selecting it.

Before the sentencing hearing, the district court issued an order "tentatively conclud[ing]" that Mendoza "should receive a sentence of imprisonment significantly above the top of the advisory Guideline range applicable to him."  Although ostensibly affected at sentencing by Mendoza's daughter's explanation of her father's resolve to care for his wife, the court reaffirmed its conviction that an above-Guidelines sentence was necessary to address the § 3553(a) factors.  It stated:

> The defendant has illegally entered the United States at least four times and – actually, at least five times I think, and then four of those entries apparently were after he had been deported, so he hasn't shown the appropriate respect for the

---

[17] *Davis*, 602 F.3d at 649 n.9 (internal citations omitted) (quoting *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006)).

[18] *Ibarra-Luna*, 628 F.3d at 718.

No. 11-11067

laws of the United States relative to illegal entry into our country.

I suppose that I should take into account, and I will take into account, the fact that perhaps some of those entries were related to his wife's condition. Though that doesn't make it right, it would provide some explanation, something in the nature of an excuse for that activity.

And then we have the fact that he's engaged in other criminal conduct, transporting illegal aliens back in 1981. He wasn't given any criminal history points for that because of the age of it.

And then he was convicted of aiding and abetting illegal aliens back in 1983. Again, he wasn't given any criminal history points because of the age of the offense.

Then he was convicted of aggravated delivery of marijuana of less than 200 pounds. That was in 1990, when he was 42 years of age. Let's see. He wasn't given any criminal history points for that, either.

And then he was convicted at age 56, in 2004, for possession of a controlled substance.

I think in order to adequately address the need to deter the defendant from future conduct of the kind he's engaged in, and to set an appropriate example for those who would be tempted to engage in that kind of conduct, a sentence above the top of the [G]uideline range is necessary, but not as – perhaps not as great as I initially – initially thought.

The court then imposed a sentence of 40 months imprisonment, a three year term of supervised release, and a special assessment of $100. The court further explained its sentence:

I think an upward variance is warranted in this case based on the things I've already mentioned, the serious nature and circumstances of the defendant's offense and criminal history,

9

> and the history of reentering the United States illegally, and the characteristics of the defendant.
>
> In order to promote respect – respect for the law and provide punishment for the offense, and to protect the public from further crimes of the defendant, a sentence of the kind I've described, I believe, is necessary and appropriate.

Mendoza contends that the court's decision to impose a *lesser* above-Guidelines sentence than it originally had planned evidences a judge with a fluid view of the case and no strong commitment to a particular sentence. Mendoza fails to recognize, however, that although the court consulted the sentencing Guidelines, as it was required to do, those Guidelines seem to have proved non-determinative in the formation of the sentence. At no point did the court suggest a variance of any particular magnitude *relative to the advisory range*.[19]

The court also highlighted Mendoza's criminal history and his high risk of recidivism as reasons for the sentence imposed. Although the court spoke with less steadfastness than did sentencing courts in other recent cases that

---

[19] Although certainly not dispositive of this point, we note that 40 months is a multiple of neither the bottom (18 months) nor top (24 months) of the applied Guidelines range; a prison term of 48 months, for example – double the upper end of the Guidelines range – might have offered stronger support for Mendoza's argument that the Guidelines range indeed provided the "frame of reference" instrumental in the court's selection of an appropriate sentence. *Cf. Ibarra-Luna*, 628 F.3d at 719 (noting that the government had failed to demonstrate harmless error in part because the 36-month sentence imposed was "exactly double the Guidelines maximum and exactly triple the Guidelines minimum" – indicating a sentence chosen to reflect a particular deviation from the Guidelines range).

No. 11-11067

Mendoza attempts to distinguish,[20] nothing in the court's statement of reasons indicates that a lower Guidelines calculation would have affected the sentence.

Mendoza further notes that the court could have eliminated any speculation about the significance of the Guidelines calculation to its sentence by stating that it would have imposed the same prison term regardless of the Guidelines range.[21] That it failed to do so, Mendoza argues, is evidence that the sentence chosen in fact depended on the Guidelines calculation. We disagree with that reasoning, especially given the dearth of other evidence indicating that the court was even somewhat influenced by the Guidelines range.[22] This case is unlike *United States v. Mudekunye*,[23] cited by Mendoza, in which this court reasoned that the absence of a similar statement by the sentencing court supported the defendant's position. In that case, the court recognized that

[20] *Cf. United States v. Dickson*, 632 F.3d 186, 191 (5th Cir. 2011) (finding no effect on substantial rights when the district court, in imposing the statutory maximum term of imprisonment, "highlighted Dickson's extensive criminal history and commented that '[h]e [was] one of the most vicious predators on children' [sic] it had ever encountered, . . . [and that] no term of imprisonment would likely deter him from engaging in child molestation"); *United States v. Harris,* 450 F. App'x 380, 382 (5th Cir. 2011) (unpublished) (finding no effect on substantial rights when the district court "found expressly the advisory Guideline sentencing range did not account adequately for [the defendant's] behavior and criminal history; imposed a sentence one month below the statutory maximum and well above the advisory sentencing range; and, flatly rejected [the defendant's] objection to the sentence, noting it was 'not going to shift'").

[21] *Cf. United States v. Lemus-Gonzalez,* 563 F.3d 88, 94 (5th Cir. 2009) (finding no reasonable probability of a lesser sentence when the district court considered both the correct and incorrect ranges and stated that it would have imposed the same sentence in any event); *United States v. Bonilla*, 524 F.3d 647, 656 (5th Cir. 2008) (same); *United States v. Tzep-Mejia*, 461 F.3d 522, 526-27 (5th Cir. 2006) (same).

[22] *See Davis*, 602 F.3d at 649 ("The court . . . had ample independent bases for imposing the sentence that it did, and Davis has cited no statements in the record to indicate that the court – which was required only to consider the advisory range indicated by the policy statements and was permitted to impose any sentence within the statutory maximum when determining the sentence – relied on the incorrect advisory range in determining his sentence.").

[23] 646 F.3d 281 (5th Cir. 2011).

No. 11-11067

"absent additional evidence, a defendant has shown a reasonable probability that he would have received a lesser sentence when (1) the district court mistakenly calculates the wrong Guidelines range, (2) the incorrect range is significantly higher than the true Guidelines range, and (3*) the defendant is sentenced within the incorrect range.*"[24]  Because the defendant in that case was sentenced within the incorrect Guidelines range, the government had the burden of demonstrating that the sentence would not have changed had the Guidelines range been calculated correctly.[25]  By contrast, Mendoza was sentenced above both the correct and the incorrect Guidelines ranges, so he is not entitled to the presumption that the sentence imposed affected his substantial rights.  Thus, the mere *absence* of an unequivocal statement from the district court that its sentence did not depend on the Guidelines calculation is not sufficient proof for Mendoza to bear his burden.

Finally, Mendoza contends that other factors might have "inspired leniency or celerity" from the sentencing judge.  This contention blends with the previous one, as Mendoza must demonstrate the likelihood of a different sentence based on the sentencing court's assessment of the case.  That court framed the relevant facts and conceded that some (such as Mendoza's reasons for illegally reentering the United States) were mitigating, but noted that most (such as Mendoza's rap sheet's spanning several decades, his continued flouting of United States immigration law, and his middle-to-late-life involvement with

---

[24] *Id.* at 289 (emphasis added) (citing *United States v. John*, 597 F.3d 263, 284-85 (5th Cir. 2010); *United States v. Jasso*, 587 F.3d 706, 713 n.10 (5th Cir. 2009)).

[25] *Id.* at 290 (reasoning that because it was "'not apparent from the record that [the defendant] would have received an above-Guidelines sentence,' the imposed sentence affects the defendant's substantial rights")(quoting *John*, 597 F.3d at 285); *see also United States v. Hernandez*, 690 F.3d 613, 621-22 (5th Cir. 2012) (defendant's substantial rights affected when court sentenced within the incorrect advisory range and no record evidence suggested that the court would have imposed an above-Guidelines sentence had it considered the correct Guidelines range).

illegal drugs) were aggravating. Regardless whether the court remained steadfast in its assessment of the appropriate sentence throughout the proceedings, it never wavered in its conclusion that an above-Guidelines sentence was warranted; neither did the Guidelines calculation have a manifest impact on the court's view of the sentencing factors – however kaleidoscopic it might have been.

Mendoza has failed to demonstrate a reasonable probability that, but for the district court's plain error, he would have received a lesser sentence. Thus, we need not decide whether to exercise our discretion to remedy the error.

A limited remand is nevertheless necessary, however: The face of the judgment reflects that Mendoza was convicted and sentenced under "8 U.S.C. 1326(a) and (b)(1)/(2)." Section 1326 subjects prior felons to a prison term of up to 10 years for a non-aggravated felony (under subsection (b)(1)), and up to 20 years for an aggravated felony (under subsection (b)(2)). Because the (b)(2) designation was erroneously added, and because that designation has future immigration consequences,[26] Mendoza's judgment must be modified to reflect a sentence under § 1326(b)(1) only. We therefore remand this case to the district court for the limited purpose of revising its written judgment to reflect this modification.[27]

AFFIRMED; REMANDED FOR CORRECTION OF JUDGMENT.

---

[26] *See, e.g.,* 8 U.S.C. 1227(a)(2)(A)(iii) (an alien convicted of an aggravated felony after his admission is deportable).

[27] *See, e.g.*, *United States v. Rivera Rosadao*, 446 F. App'x 715, 716 (5th Cir. 2011) (affirming, but modifying and remanding for the limited purpose of correcting the written judgment).