# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 18, 2013

No. 12-10011

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

ANTONIO URIBE–QUINTERO,

Defendant–Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:11-CR-00191-A-ALL

Before REAVLEY, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Defendant–Appellant Uribe–Quintero appeals his sentence for revocation of supervised release because his criminal history category was incorrectly calculated under the Sentencing Guidelines, resulting in an incorrectly high advisory imprisonment range. Because we conclude that this error did not seriously affect the fairness, integrity or public reputation of judicial proceedings, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50675

In 2006, Uribe–Quintero received a 37-month sentence of federal imprisonment and three-year term of supervised release for illegal re-entry following a deportation. After he served his federal sentence, he was deported and ordered to remain outside the United States during his period of supervised release. Despite this condition, in June 2011, he was found in the United States again. He reports that he re-entered within several months after being deported in 2009. The United States moved to revoke his supervised release and also charged him with illegal entry after deportation.

The advisory guideline range for Uribe–Quintero's illegal re-entry charge was calculated for sentencing at 70 to 87 months. Uribe–Quintero pleaded guilty to the illegal re-entry charge and received an upward variance sentence of 100 months' imprisonment. The court explained that "a sentence above the top of the advisory guideline range is necessary to adequately and appropriately address the factors that the Court should consider under 18 United States Code Section 3553(a)." The court also stated that it would have assessed a higher sentence on the illegal re-entry charge had it not been for the consecutive sentence it planned to impose for the revocation of Uribe–Quintero's supervised release:

> As I indicated in the [illegal re-entry sentencing] I took into account the probability that the defendant would receive a sentence [for the revocation of supervised release] that would run consecutive to the sentence in [the illegal re-entry case] in deciding to sentence him only to 100 months in that case. I had—and as I indicated, had I not been aware of the possibility that he would receive this further sentence, I probably would have sentenced him to a higher term, higher level of imprisonment in [the illegal re-entry case].

Thus, the court indicated that, but for the revocation sentence, it would likely have assessed a higher sentence on the illegal re-entry. Significantly, the court did not indicate by how much it would have increased the illegal re-entry

2

sentence.  Later the same day, Uribe–Quintero pleaded true to allegations in the government's motion to revoke his term of supervised release.

His Supervised Release Violation Report ("SRVR") calculated an advisory range of imprisonment for the revocation of 18 to 24 months.  Uribe–Quintero did not object to the 18-to-24 month advisory range.  The court imposed a 24-month sentence for the supervised release revocation to be served consecutively to the 100-month sentence for illegal re-entry.  The statutory maximum sentence was also 24 months.

Later it was determined that the SRVR's advisory range of 18 to 24 months was incorrect.  It was calculated based on the assumption that Uribe–Quintero fell into Criminal History Category V, when his criminal history at the time of sentencing for the underlying offense was actually Category III. The advisory range should have been 8 to 14 months.  Uribe–Quintero timely filed a notice of appeal.

## II.  JURISDICTION

The district court had jurisdiction under 18 U.S.C. §§ 3231 and 3583(e). This court has jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## III.  DISCUSSION

### A.     Standard of Review

The general rule is that a party's failure to preserve a claim of error at trial precludes it from raising the issue on appeal.  Fed. R. Crim. P. 51(b).  Rule 52(b) establishes an exception: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  *Id*. R. 52(b).  So-called plain-error review comprises four prongs.  *Puckett v. United States*, 556 U.S. 129, 135 (2009); *see also United States v. Olano*, 507 U.S. 725 (1993).  First, there must be an un-waived error or defect.  *Puckett*, 556 U.S. at 135.  Second, the legal error must be clear or obvious.  *Id*.  Third, the error must have affected the appellant's substantial rights.  *Id*.  Fourth, if the above three

prongs are met, the court of appeals has the discretion to remedy the error only if it seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id*.

#### a. Error

It was error for the court to calculate the advisory sentencing range based on Uribe–Quintero's recalculated, rather than original, criminal history category, as the government concedes. His Criminal History Category should have been III, resulting in an advisory sentencing range of 8 to 14 months, instead of Criminal History Category V with a range of 18 to 24 months.

#### b. Clear Error

The government concedes that the revocation sentencing error was clear, satisfying the second prong of "plain-error review."

#### c. Affected Appellant's Substantial Rights

To affect the defendant's substantial rights, "the defendant must demonstrate that the error affected the outcome of the district court proceedings." *United States v. Escalante–Reyes*, 689 F.3d 415, 424 (5th Cir. 2012) (en banc) (citing *United States v. Broussard*, 669 F.3d 537, 553 (5th Cir. 2012)). In the sentencing context, an appellant can show an effect on his substantial rights where he can demonstrate a "reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence." *United States v. Villegas*, 404 F.3d 355, 364 (5th Cir. 2005). The reasonable probability of receiving a lesser sentence occurs when the appellant "undermine[s] [the panel's] confidence that the district court would have imposed the same sentence absent the error." *Escalante–Reyes*, 689 F.3d at 425. This court recently reaffirmed en banc that clear error does not automatically warrant reversal and that plain-error review is fact-specific. *Escalante–Reyes*, 689 F.3d at 424.

A recent case lays out a set of factors that would create a presumption that a defendant's substantial rights have been affected:

> [A]bsent additional evidence, a defendant has shown a reasonable probability that he would have received a lesser sentence [thereby satisfying the third prong] when (1) the district court mistakenly calculate[d] the wrong Guidelines range, (2) the incorrect range is significantly higher than the true Guidelines range, and (3) the defendant is sentenced within the incorrect range.

*United States v. Mudekunye*, 646 F.3d 281, 289–90 (5th Cir. 2011); *see also United States v. Mendoza–Perez*, 496 F. App'x 431, 437–38 (5th Cir. 2012) (per curiam) (unpublished) (comparing its facts against the presumption first mentioned in *Mudekunye*).

Uribe–Quintero argues that the *Mudekunye* presumption suggests that he has satisfied the third prong by receiving a sentence that is within an incorrect range. The government argues that Uribe–Quintero cannot establish a reasonable probability that he would have received a lower sentence; specifically, the government argues the district court would have imposed a greater upward variance than it did on the underlying illegal re-entry offense had it not been for the additional sentence for revocation of supervised release.

Uribe–Quintero argues that because the district court likely conformed Uribe–Quintero's sentence to the incorrect sentencing range before it, his sentence would have been lower had the correct sentencing range been available. The district court's choice to sentence Uribe–Quintero to the upper bound of the incorrect advisory range could suggest that it felt constrained by the advisory range, and that, presented with the correct advisory range, it would have sentenced Uribe–Quintero to its upper bound, shaving 10 months off his revocation sentence. Alternately, the district court could instead have felt constrained by the statutory maximum sentence of 24 months, suggesting that Uribe–Quintero would have received that same sentence regardless of the

advisory range used.  This uncertainty undermines the court's "confidence that the district court would have imposed the same sentence absent the error."  *See Escalente–Reyes*, 689 F.3d at 425.

The government argues that the district court's commentary at sentencing indicates that it would not have meted out a lower sentence if presented with the correct advisory range.  The government relies on *United States v. Davis*,  602 F.3d 643, 649 n.9 (5th Cir. 2010) ("By itself, the district court's erroneous selection of the incorrect guideline range [wa]s not enough to demonstrate that the substantial rights prong of the plain error test [wa]s satisfied.")  However, *Davis* is inapposite.  In *Davis*, the district court applied an incorrect 15 to 21 sentencing range, instead of the accurate 6 to 12 month range.  *Id*. at 646.  Despite the incorrect recommendation, the court sentenced Davis to a 24-month sentence—a term even longer than the upper bound of the higher range.  *Id*.  Thus, for Davis, the above-mentioned *Mudekunye* presumption would not apply.  This court rejected Davis's contention that his substantial rights were affected; by sentencing Davis outside the sentencing range, the district court demonstrated that it had independent grounds for selecting a sentence above even the incorrect advisory range, such that Davis could not establish a reasonable probability that his sentence would have been lower were it not for the district court's consideration of the incorrect advisory range.  *Id*. at 650.  Uribe–Quintero's sentence, by contrast, was within the incorrect advisory range.

The government argues that the district court "accounted for the looming revocation sentence by decreasing the sentence for the substantive offense."  Therefore, the government states, "the record here precludes Uribe–Quintero from establishing—as he must—that but for the error, he would have received a lower sentence."  There are several problems with the government's position.  First, Uribe–Quintero does not have to establish that he would have received a lower sentence, as the government argues.  His burden is lower: he must

establish a "reasonable probability" that he would have received a lower sentence. *See Villegas*, 404 F.3d at 364. Second, even if the district court would have varied upward to a greater degree, as the government contends, it is not clear that it would have been by the same amount of time as the reduction in the supervised release sentence, suggesting he could have received a lower sentence. Either way, the inquiry is conjecture, which at least undermines the court's confidence that the district court would have imposed the same sentence. *See Escalante–Reyes*, 689 F.3d at 425 (holding that undermining the panel's confidence that the appellant would receive the same sentence on remand satisfies the third prong).

Ultimately, the government does not provide enough "additional evidence" to override the presumption that when a defendant is sentenced within a significantly higher incorrect range, he has established a reasonable probability that he would have received a lesser sentence. Uribe–Quintero's evidence at least "undermine[s] . . . confidence that the district court would have imposed the same sentence." *See Escalante–Reyes*, 689 F.3d at 425.

### *d. Discretion Based on Serious Effect to Fairness, Integrity, or Public Reputation of Judicial Proceedings*

Having found the first three prongs satisfied, the court may exercise its discretion to reverse only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Puckett*, 556 U.S. at 135. Notably, the fourth prong is not automatically granted if the other three prongs are met. *Escalante–Reyes*, 689 F.3d at 425. This Circuit has declined to "adopt a blanket rule that once prejudice is found [in the third prong], the error invariably requires correction." *United States v. Reyna*, 358 F.3d 344, 352 (5th Cir. 2004) (en banc).

The Supreme Court has "emphasized that a *per se* approach to plain-error review is flawed." *United States v. John*, 597 F.3d 263, 285 (5th Cir. 2010). This

fourth prong is meant to be case-specific and fact-intensive. *Escalante–Reyes*, 689 F.3d at 431.

The specific details of Uribe–Quintero's criminal history counsel against reversal. *See, e.g.*, *United States v. Davis*, 602 F.3d 643, 650–52 (5th Cir. 2010) (discussing defendant's return to criminal activities only five months into supervised release); *United States v. Jones*, 489 F.3d 679, 682 (5th Cir. 2007) (discussing criminal history and offense characteristics). He had previously pleaded guilty to driving while intoxicated, another illegal re-entry charge, and aggravated assault with a deadly weapon—where he attempted to stab the victim with a knife at a convenience store. More significantly, Uribe–Quintero admitted that after being deported and told that he could not return to the United States during his period of supervised release, he violated his conditions by re-entering within the same year. Uribe–Quintero's violation of his conditions of supervised release so soon after beginning his term indicates that affirming the district court's sentence would not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM.