# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 5, 2020

Lyle W. Cayce
Clerk

No. 18-20184

United States of America,

*Plaintiff—Appellee*,

*versus*

Idowu Olugbenga Temetan, *also known as* David Cole,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CR-99-1

Before Higginbotham, Jones, and Higginson, *Circuit Judges*.
Per Curiam:[*]

Upon pleading guilty to several fraud-related crimes, Appellant Idowu Olugbenga Temetan was sentenced to 51 months' imprisonment followed by a three-year term of supervised release ("TSR"). He raises two challenges on appeal. First, he contends the district court erred in imposing supervised release because the Sentencing Guidelines counsel against a TSR where the

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 18-20184

defendant is, like Temetan, a deportable alien. Alternatively, he challenges one of the conditions of his TSR, arguing that the district court failed to orally pronounce it at sentencing. The Government acknowledges that error and seeks correction of an additional clerical error in the written judgment. We affirm the district court's imposition of supervised release, but we vacate the judgment in part and remand for the district court to conform the judgment to its oral pronouncements at sentencing.

## I.

In October 2017, Idowu Olugbenga Temetan, a citizen of Nigeria and legal permanent resident of the United States, pleaded guilty to one count of conspiracy to commit wire fraud, one count of passport forgery, and three counts of wire fraud. The charges arose from an email scheme that used promises of "investment opportunities, international lottery winnings, or similar claims" to induce targets into sharing their banking information or sending money to cover purported processing fees. Temetan was sentenced to 51 months in prison followed by a three-year TSR. The court also ordered restitution in the amount of $187,422.60 and set a payment schedule for that award. Temetan did not object to the TSR or the restitution plan.

Temetan raises two arguments on appeal. First, he contends that the district court erred in imposing a TSR because he is a deportable alien.[1] Second, he argues that the district court abused its discretion by imposing a supervised release condition that it did not recite at sentencing.

---

[1] Although the Government initially contends it is "not clear whether Temetan qualified as a 'deportable alien' at the time of sentencing," it later concedes that he likely is deportable under 8 U.S.C. § 1227 because his "crimes qualify as ones of moral turpitude."

No. 18-20184

## II.

## A.

Section 5D1.1(c) of the Sentencing Guidelines states that a district court "ordinarily should not impose a term of supervised release [where] the defendant is a deportable alien who likely will be deported after imprisonment." However, the accompanying commentary provides that supervised release may be appropriate for such a defendant if it would provide added deterrence or protection.[2] In imposing a TSR on a deportable defendant, the district court need not expressly refer to § 5D1.1(c) as long as it offers a "particularized explanation and concern [that] would justify imposition of a term of supervised release."[3] Where, as here, the TSR imposed is within the defendant's Guidelines range, this "requirement is not onerous."[4]

Temetan acknowledges the district court's discretion over supervised release but maintains that the court erred by failing to explain its deviation from § 5D1.1(c). Because he did not object below, we review for plain error.[5] To establish plain error, Temetan must show a forfeited error that is clear or obvious and affects his substantial rights.[6] If he makes that showing, we may correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings."[7]

---

[2] U.S.S.G. § 5D1.1 cmt. n.5.

[3] *United States v. Dominguez-Alvarado*, 695 F.3d 324, 330 (5th Cir. 2012).

[4] *United States v. Becerril-Pena*, 714 F.3d 347, 349 (5th Cir. 2013).

[5] *Dominguez-Alvarado*, 695 F.3d at 327.

[6] *Puckett v. United States*, 556 U.S. 129, 135 (2009).

[7] *Id.* (internal alterations omitted) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

**B.**

The district court did not invoke § 5D1.1(c) at Temetan's sentencing hearing, nor did it explain why it chose to impose supervised release.[8] However, the court did state that its overall sentence was justified by "the seriousness of [Temetan's] offense, the fact that he's in Criminal History Category II, and the fact that he's a little more culpable than his codefendant," who received a lesser sentence.[9]

Under our precedent, this explanation was likely adequate to justify supervised release. In *Dominguez-Alvarado*, for example, it was enough that before imposing supervised release on a deportable defendant, the district court referenced the statutory sentencing factors, the need to "deter future criminal conduct," and the defendant's "particular background and characteristics."[10] Likewise in *Becerril-Pena*, the district court's finding that the defendant's sentence was "appropriate under the factors listed in 18 U.S.C. § 3553(a) and those applicable to sentencing generally" provided a sufficiently particularized explanation for its imposition of a TSR.[11]

Even if the court's explanation were clearly erroneous, Temetan fails to show that the error affected his substantial rights. "A sentencing error affects a defendant's substantial rights if he can show a reasonable probability that, but for the district court's misapplication of the Guidelines, he would

---

[8] Temetan's PSR likewise omitted § 5D1.1(c) from its recommendation on supervised release.

[9] We are not limited to considering the district court's statements about supervised release in particular; rather, we may "consider, as a whole, the district court's remarks at the sentencing hearing." *United States v. Figueroa-Dominguez*, 675 F. App'x 488, 490 (5th Cir. 2017) (unpublished) (per curiam).

[10] *Dominguez-Alvarado*, 695 F.3d at 330.

[11] *Becerril-Pena*, 714 F.3d at 351.

have received a lesser sentence."[12] Temetan's TSR was within the advisory Guidelines range, he had a significant criminal history, and the fraudulent scheme for which he was convicted had devastating consequences for its victims, many of them elderly or disabled. All these factors counsel in favor of supervised release, and it is unlikely a more particularized explanation would have changed the court's sentence.[13] Thus, we affirm the district court's imposition of supervised release.

## III.

Temetan next argues that there is a discrepancy between the court's oral pronouncements at sentencing and one of the supervised release conditions that appears in his written judgment. Among the proposed conditions listed in Temetan's presentence investigation report ("PSR"), which the court orally adopted at sentencing, was a requirement that he report to the nearest U.S. Probation Office within 72 hours of reentering the United States after removal. However, the court's written judgment requires *immediate* reporting. The Government concedes that this discrepancy is error and the PSR's 72-hour provision should control.[14] We therefore remand for the district court to revise Temetan's judgment accordingly.

---

[12] *United States v. Cancino-Trinidad*, 710 F.3d 601, 606 (5th Cir. 2013) (quoting *United States v. Mudekunye*, 646 F.3d 281, 289 (5th Cir. 2011)).

[13] *See United States v. Chavez-Chum*, 768 F. App'x 247, 251 (5th Cir. 2019) (unpublished) (per curiam) (explaining that where a defendant's TSR is "within the recommended Guidelines range for a supervised-release term, [it is] presumptively reasonable" despite any § 5D1.1(c) error); *Becerril-Pena*, 714 F.3d at 351 (Regardless of § 5D1.1(c), "supervised release remains especially appropriate for defendants with lengthy criminal histories."); U.S.S.G. § 5D1.1 cmt. n.3 (instructing sentencing courts "to consider, among other factors . . . the nature and circumstances of the offense").

[14] *See United States v. Mireles*, 471 F.3d 551, 557 (5th Cir. 2006) ("Where there is an actual conflict between the district court's oral pronouncement of sentence and the written judgment, the oral pronouncement controls."). Temetan would have us vacate the

No. 18-20184

## IV.

Finally, the Government seeks correction of a clerical error in the written judgment, which does not reflect the restitution payment plan orally pronounced at sentencing. Temetan does not address the Government's request, so we consider it unopposed and remand for the district court to add the payment plan announced at sentencing to the judgment.[15]

## V.

For the foregoing reasons, we affirm the district court's imposition of supervised release, but we vacate the judgment in part and remand to the district court for the limited purpose of conforming the written judgment to its oral pronouncements at sentencing.

---

reporting provision altogether on the ground that the district court did not recite it at sentencing. However, in the time since briefing in this case concluded, we have clarified that the district court may satisfy its oral-pronouncement obligation either by enumerating the conditions of supervised release at sentencing *or* by orally adopting a document, typically a PSR, that lists the conditions. *United States v. Diggles*, 957 F.3d 551, 560 (5th Cir. 2020) (en banc); *see id.* at 561 n.5. In this case, the district court did the latter.

[15] *See United States v. Illies*, 805 F.3d 607, 610 (5th Cir. 2015) (remanding for the district court to correct a clerical error regarding the defendant's consecutive sentences); *United States v. Lemoine*, 326 F. App'x 869, 870 (5th Cir. 2009) (unpublished) (per curiam) (remanding for the district court to correct a clerical error concerning the schedule for the defendant's restitution payments).